UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CR No. 07-134-T |
| | : | |
| SOUTHERN UNION COMPANY | : | |

**SOUTHERN UNION COMPANY'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO ENLARGE DATES SET IN ARRAIGNMENT AND PRETRIAL DISCOVERY ORDER**

The Government's objection to Southern Union Company's ("Southern Union") Motion to Enlarge Dates Set in Arraignment and Pretrial Discovery Order argues that:

- this is not a complex case;
- the Defendant's own documents constitute the majority of the Government's disclosure;
- with the exception of the Defendant's documents, the Government provided discovery in electronic format so that such discovery could be "easily uploaded to a searchable database of the Defendant's choice;"
- "virtually all of the witnesses for which the Government has provided testimony" or Investigative Activity Reports (IARs) are current or former employees of Southern Union;
- there is no need for a *Daubert/Kumho Tire* type hearing; and
- 60 days enlargement is sufficient and adequate time to protect Southern Union's constitutional rights.

Southern Union responds to each of the Government's arguments as follows:

**FIRST**

Although the Government claims that this is not a "complex case":

- the Government's investigation took three years;

- the Government called dozens of witnesses to give testimony at the grand jury and the Government provided only some of that testimony in discovery;
- the Government obtained testimony and statements from dozens of witnesses through IARs and the Government provided only some of that testimony in discovery;
- to the best of Southern Union's knowledge, the Government issued at least 75 grand jury subpoenas[1]; and
- the Government interviewed many more witnesses whose testimony has not been provided to Southern Union (either grand jury or Investigative Activity Report [IAR]).

The Government's argument that the case is not complex because the Indictment alleges *only* three counts, involves *only one hazardous substance*, mercury, at *one location*, and a spill that occurred on *one date*, October 19, 2004, is nothing more than a straw man that the Government sets up and then seeks to knock down. As the Government well knows, this is a complex case, which, as the Indictment makes plain, concerns the alleged conduct of dozens of Southern Union employees and others between 2001 and 2004. As the Government explained in a press statement following the Indictment, the Indictment against Southern Union is a significant environmental case and Southern Union faces $66 million in fines as a result of the charges in the Indictment.

**<u>SECOND</u>**

The Government neglects to mention that the discovery it has provided to Southern Union in electronic format amounts to approximately 50 binders of material, and tens of thousands of pages that are *not* the documents Southern Union provided to the grand jury pursuant to various Government subpoenas. Rather, the documents Southern Union provided to the grand jury consist of approximately 40,000 pages which are contained in an additional 21

[1] The number comes from the subpoena tracking number on the last subpoena issued to one of Southern Union's employees.

boxes of documents that the Government has in its possession. Southern Union needs to re-review those documents in light of the grand jury testimony, IARs and other discovery provided by the Government. Southern Union also needs to ensure there is no discrepancy between what Southern Union believes it produced and what the Government has identified as Southern Union documents.

**THIRD**

By letter dated November 30, 2007, which defense counsel received on December 3, 2007, the Government provided Southern Union with additional documents on CD. Southern Union has just begun to look at those documents and it will take time to review and analyze them.

**FOURTH**

With respect to the grand jury transcripts and IARs produced in discovery, the Government states that the discovery is of current or former employees of Southern Union. However, only three of the 29 persons are current employees of Southern Union. All of the others are former employees to whom Southern Union does not have access. In fact, Southern Union did not represent these former employees at the grand jury and a majority of them have their own counsel.[2]

---

[2] Moreover, while the Government implies that Southern Union has had access to these witnesses, that is not necessarily the case. Rather, to the extent that Southern Union has spoken to any of these witnesses, whether current or former employees, any such interviews took place *before* the Government produced the grand jury testimony and IARs. Southern Union should be entitled to an opportunity to conduct an investigation to prepare its defense, now informed by the discovery provided by the Government, and further interview these witnesses (if they choose to meet with Southern Union's counsel).

**FIFTH**

With respect to the expert disclosure provided by the Government in discovery, among other things, the Government's expert purports to be able to estimate and opine on the amount of mercury that was allegedly stored in a wooden cabinet at the Tidewater facility and he also purports to be able to opine on the approximate weight of the spilled mercury, based on witness "descriptions" of the mercury found spilled at Tidewater, *i.e.*, mercury that was scattered around the Tidewater site by vandals who broke into Southern Union's property. Finally, the Government's expert purports to be able to opine that "more than one pound of mercury" was spilled at the Tidewater site (a fact relevant for reporting purposes) "based on his experience with mercury and the witnesses' descriptions of the size of the puddles of mercury on the ground." (Governments' discovery response at 3-4). Southern Union is in the process of determining whether it needs to retain its own expert in this regard, but based on the information presently provided, Southern Union believes that there is a basis for a *Daubert/Kumho Tire* type hearing to test these unusual opinions. These are not, as the Government claims, testimony and opinions that are akin to "a chemist's analysis in a drug case." (Government Objection at 3)

**SIXTH**

This is a significant and complex case, one which the Government took three years to investigate. The Government compiled tens of thousands of pages of documentary evidence and other tangible evidence, and obtained grand jury testimony and IARs from dozens of individuals, evidence that it now seeks to use against Southern Union. Remarkably, however, the Government wants to deprive Southern Union of a reasonable opportunity to defend itself against the charges. Southern Union has a constitutional right to present a defense and for the reasons stated in Southern Union's original motion and in this reply, Southern Union will be

severely prejudiced if it is not granted the 120 days enlargement. On the other hand, the Government will not be prejudiced in any respect if Southern Union's motion is granted.

**CONCLUSION**

For the reasons stated, Southern Union requests that its motion to enlarge be granted.

/s/ John A. Tarantino
JOHN A. TARANTINO (#2586)
jtarantino@apslaw.com
PATRICIA K. ROCHA (#2793)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, Rhode Island 02903
Tel: 401-274-7200
Fax: 401-351-4607
Dated: December 6, 2007

GERALD J. PETROS
HINCKLEY, ALLEN & SNYDER LLP
1500 Fleet Center
Providence, RI 02903

*Attorneys for Southern Union Company*

CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of December, 2007, I served a true copy of the within pleading *via electronic means (ECF)* on Stephen G. Dambruch, Assistant U.S. Attorney, Terrence P. Donnelly, Assistant U.S. Attorney, Dianne G. Chabot, Special Assistant U.S. Attorney, and Kevin M. Cassidy, Trial Attorney at the United States Attorney's Office, 50 Kennedy Plaza, 8th Floor, Providence, RI 02903.

/s/ John A. Tarantino

*437339_1.doc*