**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| | * | |
| | * | |
| v. | * | CR No. 07-134S |
| | * | |
| | * | |
| SOUTHERN UNION COMPANY | * | |

**UNITED STATES' OBJECTION TO**
**DEFENDANT'S MOTION IN LIMINE TO EXCLUDE REFERENCE AT TRIAL**
**TO THE PHYSICAL CONDITIONS OF AND**
**LACK OF SECURITY AT THE TIDEWATER SITE**

The defendant has moved *in limine* to preclude the government from presenting evidence relating to the physical conditions of and lack of security at the defendant's Tidewater facility. For the reasons stated in the attached Memorandum of Law, the government objects to the Motion.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/ TERRENCE P. DONNELLY
TERRENCE P. DONNELLY
Assistant U. S. Attorney
R.I. Bar No. 3506
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
terrence.donnelly@usdoj.gov

KEVIN CASSIDY
Trial Attorney
Department of Justice
Environmental Crimes Section
601 D St. NW
Washington, DC 20530
Tel (202) 305-0333
kevin.cassidy@usdoj.gov

DIANNE CHABOT
Special Assistant U.S. Attorney
Regional Criminal Enforcement Counsel
U.S. Environmental Protection Agency
One Congress Street
Suite 1100, SAA
Boston, MA 02114-2023
Tel (617) 918-1868
Fax (617) 918-0868
chabot.dianne@epa.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| | * | |
| | * | |
| v. | * | CR No. 07-134S |
| | * | |
| | * | |
| SOUTHERN UNION COMPANY | * | |

**UNITED STATES' MEMORANDUM OF LAW IN SUPPORT OF ITS OBJECTION TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE REFERENCE AT TRIAL TO THE PHYSICAL CONDITIONS OF AND LACK OF SECURITY AT THE TIDEWATER SITE**

## I. Introduction

The Indictment alleges that defendant Southern Union Company was storing mercury and mercury containing regulators at its Tidewater facility without a hazardous waste permit. The principle disputed factual issue for the jury to decide at trial is whether the mercury was waste, as the Government alleges, or a commercial chemical product, as the defendant contends. The conditions in which the defendant stored the mercury are highly relevant to this factual issue as well as to the defendant's mental state. Moreover, evidence regarding the "less than ideal conditions at the Tidewater site" (Def. Mot. to Strike Surplusage at 1) and lack of security at a vacant facility is not the type of evidence likely to inflame a jury, and therefore is not unfairly prejudicial. The jury is entitled to hear this highly probative evidence. Accordingly, the defendant's motion *in limine* should be denied.

## II. The Decrepit Conditions and Lack of Security at the Tidewater Site Are Relevant

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be

without the evidence." FED. R. EVID. 401. In the First Circuit, "the threshold for relevance is very low under Federal Rule of Evidence 401." *United States v. Tutiven*, 40 F.3d 1, 6 (1st Cir. 1994) (quoting *United States v. Cotto-Aponte,* 30 F.3d 4, 6 (1st Cir.1994)); *see also United States v. Nason,* 9 F.3d 155, 162 (1st Cir.1993). "Evidence may be 'relevant' under Rule 401's definition, even if it fails to prove or disprove the fact at issue – whether taken alone or in combination with all other helpful evidence on that issue." *United States v. Candelaria-Silva*, 162 F.3d 698, 704 (1st Cir. 1998) (quoting *United States v. Schneider,* 111 F.3d 197, 202 (1st Cir.1997)).

The fact that the defendant stored used mercury in a vacant, run-down and often vandalized building in open plastic jugs and old paint cans makes it more probable that the mercury Southern Union was storing was waste. As the defendant acknowledges, the Government must prove beyond a reasonable doubt that the mercury was waste in order to prevail on Counts I and III. Indeed, the defendant goes to great lengths to offer a defense to this element for Count I by claiming that the liquid mercury that Southern Union stored at Tidewater was not a waste, but rather a "commercial chemical product" that it intended to recycle. *See* Defendant's Memorandum of Law in Support its Motion to Dismiss at 11-12. Actions speak louder than words. Such is the case here.

Southern Union was not using the mercury stored at Tidewater in any process as part of its business. The mercury had no value to Southern Union as a commercial product, which is one of the reasons the defendant began to remove the mercury from the gas regulators in 2001 and send it to Bethlehem Apparatus. The mercury removal program, however, was short-lived. After December 2001, Southern Union discontinued the program and mercury began to accumulate at

Tidewater. The loose mercury was stored in glass jars, plastic jugs and old paint cans.[1] The obsolete mercury-containing gas regulators were stored in kiddie pools, until they became too numerous, at which time they were left on the floor. The building in which the mercury was stored was not well-maintained and often exposed to the elements via broken windows and doors. Extensive graffiti was a testament to how often the building was visited by trespassers. After several years of a regular – albeit minimal – security presence at the Tidewater site, Southern Union cut back on security as the facility became less important to the business and evolved into a convenient, out of the way place to store its mercury waste. This is not the manner in which companies typically treat their commercial products.

In amending its definition of solid waste in 1985, the Environmental Protection Agency ("EPA") specifically discussed indications of sham recycling, including indications that "the secondary materials are not handled in a manner consistent with their use as raw materials or commercial product substitutes." 50 Fed. Reg. 614-01, 638. EPA's preamble further stated that "if secondary materials are stored or handled in a manner that does not guard against significant economic loss (i.e., the secondary materials are stored in leaking surface impoundments, or are lost through fires or explosions), there is a strong suggestion that the activity is not legitimate recycling." *Id*. Thus, EPA considered the manner in which companies stored hazardous materials to be highly relevant to the specific issue in dispute in this case—whether the mercury was waste or a commercial product the defendant was legitimately recycling.

The conditions at Tidewater and the lack of security also are relevant to the defendant's

[1] By contrast, the mercury that was shipped to Bethlehem Apparatus was held in steel flasks, specifically designed to transport mercury.

mental state. The defendant admits it collected 450 pounds of liquid mercury from obsolete gas regulators, which it sent to Bethlehem Apparatus for recycling in December 2001. The Government does not dispute that the defendant had a short-lived mercury removal program. However, the defendant further states, that it "intended to repeat this process" but was thwarted by the vandals. This bald statement is unsupported by any facts; indeed, the facts described above directly contradict it. The fact that the defendant discontinued the security guard at Tidewater despite repeated reports of trespassers and homeless people living on the grounds and allowed the site to deteriorate makes it more probable that the defendant did not care what happened to the mercury there, which is plainly inconsistent with its claim that it intended to repeat the recycling process. These facts rebut the defendant's "commercial product" defense and, accordingly, make it more probable that the mercury was waste.

Finally, the conditions at Tidewater and lack of security are relevant to the defendant's failure to obtain a hazardous waste storage permit. The primary reason for requiring permits to store hazardous wastes is to enable regulators to track the waste during its entire life cycle so they can ensure that the waste is safely and properly stored, appropriately labeled, and that the public and the environment are sufficiently protected. The manner in which Southern Union was storing its mercury would have made it impossible for them to obtain a permit without significantly improving the storage conditions, posting labeling and warning signs, and taking steps to prevent regular access to the storage area by members of the public. *See, e.g., United States v. Dee*, 912 F.2d 741, 747 (4th Cir. 1990) (rejecting defendant's argument that "'[s]loppy storage procedures is [sic] not a crime," stating that "[n]egligent and inept storage of hazardous waste is one of the evils that RCRA was designed to prevent, and § 6928(d) makes such

egregious conduct a crime.").

## III. Evidence Relating to the Conditions at the Tidewater Facility and Lack of Security is not Unfairly Prejudicial

Generally, "[a]ll relevant evidence is admissible," while "[e]vidence which is not relevant is not admissible." FED. R. EVID. 402. However, even if evidence is relevant, it "may be excluded if its probative value is substantially outweighed by the danger of *unfair* prejudice." FED. R. EVID. 403 (emphasis added). "Evidence is unfairly prejudicial if it 'invites the jury to render a verdict on an improper emotional basis.'" *United States v. Flemmi*, 402 F.3d 79, 86 (1st Cir. 2005) (citing *United States v. Varoudakis,* 233 F.3d 113, 122 (1st Cir.2000) (stating that a reviewing court should be "cautious when [evidence] is [ ] shocking or heinous [and, thus,] likely to inflame the jury" (internal quotation marks omitted))); *see also United States v. Currier,* 836 F.2d 11, 18 (1st Cir.1987) ( "Unfairly prejudicial evidence ... is evidence that triggers the mainsprings of human action in such a way as to cause a jury to base its decision on something other than the established proposition in the case.") (internal quotation marks and brackets omitted).[2]

This does not mean, of course, that there was absolutely no prejudice. "By design, all evidence is meant to be prejudicial; it is only *unfair* prejudice which must be avoided." *United States v. Gobbi*, 471 F.3d 302, 312 (1st Cir. 2006) (quoting *United States v. Rodriguez-Estrada,* 877 F.2d 153,156 (1st. Cir. 1989). The evidence the defendant seeks to exclude does not present

---

[2] "Only rarely – and in extraordinarily compelling circumstances – will we, from the vista of a cold appellate record, reverse a district court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect." *United States v. Sabetta,* 373 F.3d 75, 82-83 (1st Cir. 2004) (internal quotation marks omitted). This restrictive appellate review standard should apply with even more force to motions *in limine*, where there is not even a cold record from which to draw conclusions, only representations as to the facts by counsel.

any unfair prejudice. Even the defendant characterized the conditions at the Tidewater facility as "less than ideal." That is hardly the type of shocking or heinous testimony likely to inflame a jury. The defendant cannot have it both ways—on the one hand, minimizing the run-down conditions at Tidewater as "less than ideal," and, on the other, claiming the conditions were so bad as to be likely to inflame the jury. It is hard to imagine how a jury could be inflamed by poor housekeeping, overgrown vegetation or overdue repair work. Similarly, lack of company security at a largely vacant facility is not inflammatory. It is only the highly probative value of this evidence in demonstrating that the defendant cared so little for its alleged "commercial product" that it failed to adequately protect it from trespassers that makes the evidence prejudicial at all. But it is not the type of shocking or heinous evidence that rises to the level of unfair prejudice that substantially outweighs its probative value.

If the Court is at all concerned about potential unfair prejudice, the proper remedy in this case is not the extreme sanction of excluding highly relevant evidence, but rather a limiting instruction to the jury. *See, e.g., United States v. Freeman,* 208 F.3d 332, 345 (1st Cir. 2000) ("We have held that within wide margins, the potential for prejudice ... can be satisfactorily dispelled by appropriate curative instructions. Jurors are presumed to follow such instructions, except in extreme cases.") (internal quotation marks and citations omitted; alteration in original). While the government does not believe a jury instruction will be necessary, that determination is better left for trial when the Court can assess the testimony first-hand.

**IV. Conclusion**

The deteriorating conditions of the Tidewater facility where Southern Union choose to store its mercury and the cut back of security at the site make it more probable that the mercury

was waste, rather than a commercial product that Southern Union intended to recycle one day. This type of highly relevant evidence is not substantially outweighed by unfair prejudice to the defendant. The defendant's motion *in limine* to exclude this evidence from the jury should be denied.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/ TERRENCE P. DONNELLY
TERRENCE P. DONNELLY
Assistant U. S. Attorney
R.I. Bar No. 3506
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
terrence.donnelly@usdoj.gov

KEVIN CASSIDY
Trial Attorney
Department of Justice
Environmental Crimes Section
601 D St. NW
Washington, DC 20530
Tel (202) 305-0333
kevin.cassidy@usdoj.gov

DIANNE CHABOT
Special Assistant U.S. Attorney
Regional Criminal Enforcement Counsel
U.S. Environmental Protection Agency
One Congress Street
Suite 1100, SAA
Boston, MA 02114-2023
Tel (617) 918-1868
Fax (617) 918-0868
chabot.dianne@epa.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on April 4, 2008, a copy of the within United States' Objection to Defendant's Motion in Limine to Exclude Reference at Trial To the Physical Conditions of and Lack of Security at the Tidewater Site, and its accompanying Memorandum of Law, was filed electronically and is available for viewing and downloading from the ECF system.

Electronic notification:

JOHN A. TARANTINO (#2586)
jtarantino@apslaw.com
PATRICIA K. ROCHA (#2793)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, Rhode Island 02903
Tel: 401-274-7200
Fax: 401-351-4607

GERALD J. PETROS
HINCKLEY, ALLEN & SNYDER LLP
1500 Fleet Center
Providence, RI 02903

/s/ TERRENCE P. DONNELLY
TERRENCE P. DONNELLY
Assistant U. S. Attorney
R.I. Bar No. 3506
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
terrence.donnelly@usdoj.gov