**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| | * | |
| | * | |
| v. | * | CR No. 07-134S |
| | * | |
| | * | |
| SOUTHERN UNION COMPANY | * | |

**UNITED STATES' OBJECTION TO DEFENDANT'S**
**MOTION TO STRIKE SURPLUSAGE FROM THE INDICTMENT**

The defendant has moved pursuant to Fed. R. Crim. P. 7(d) to strike certain paragraphs from the indictment. For the reasons stated in the attached Memorandum of Law, the United States objects.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/ TERRENCE P. DONNELLY
TERRENCE P. DONNELLY
Assistant U. S. Attorney
R.I. Bar No. 3506
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
terrence.donnelly@usdoj.gov

KEVIN CASSIDY
Trial Attorney
Department of Justice
Environmental Crimes Section
601 D St. NW
Washington, DC 20530
Tel (202) 305-0333
kevin.cassidy@usdoj.gov

DIANNE CHABOT
Special Assistant U.S. Attorney
Regional Criminal Enforcement Counsel
U.S. Environmental Protection Agency
One Congress Street
Suite 1100, SAA
Boston, MA 02114-2023
Tel (617) 918-1868
Fax (617) 918-0868
chabot.dianne@epa.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| | * | |
| | * | |
| v. | * | CR No. 07-134S |
| | * | |
| | * | |
| SOUTHERN UNION COMPANY | * | |

**UNITED STATES' MEMORANDUM OF LAW**
**IN SUPPORT OF ITS OBJECTION TO DEFENDANT'S**
**MOTION TO STRIKE SURPLUSAGE FROM THE INDICTMENT**

The defendant has moved to strike several paragraphs from the indictment as surplusage. A defendant must establish that the challenged language is not relevant to the charges in an indictment and is inflammatory and prejudicial. Because the challenged allegations are highly relevant to the charged conduct, and because they do not unfairly prejudice the defendant, the United States objects.

## I. A Motion to Strike Surplusage Should Rarely Be Granted and Only When the Language Is Irrelevant to the Charged Conduct and is Inflammatory and Unfairly Prejudicial.

While the defendant argues that Federal Rule of Criminal Procedure 7(d) allows the court to strike surplusage from the indictment, a court only may do so if it will "protect...the defendant against immaterial or irrelevant allegations in an indictment, . . . which may . . . be prejudicial." *United States v. Fahey*, 769 F.2d 829, 841-2 (1st Cir. 1985). Thus, a defendant must establish both unfair prejudice and irrelevance to successfully move to strike. *See United States v. Lewis*, 40 F.3d 1325, 1346 (1st Cir. 1994) (surplusage must be both irrelevant and "unfairly" prejudicial). Accordingly, even if relevant language in an indictment is prejudicial, it should not

be stricken as surplusage. *See United States v. Climatemp*, 482 F. Supp. 376, 391 (N.D. Ill. 1979) ("[I]f the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant).").

The standard for striking surplusage is an "exacting [one] which is met only in rare cases." *United States v. Eisenberg*, 773 F. Supp. 662, 700 (D.N.J. 1991). "Only rarely has surplusage been stricken." *United States v. El-Silimy, et al*, 228 F.R.D. 52 (D. Me. 2005). "Furthermore, it is proper for the indictment to contain relevant background information." *Id*. at 89 (quoting *Climatemp*, 482 F. Supp. at 391-92). Indeed, courts have consistently refused to strike language that is "in a general sense relevant to the overall scheme charged in the indictment" even if it is "not essential to the charges," or if it is "relevant to the evidence that the government will present at trial." *See United States v. Caruso*, 948 F. Supp. 382, 392 (D.N.J. 1996); *see also United States v. Giampa*, 904 F. Supp. 235, 271-72 (D. N.J. 1995).

Indeed, the objected-to-allegations also serve the salutary effect of giving the defendant more detailed notice of the charges against it. It should not go unnoted here that the defendant moved (unsuccessfully) for a bill of particulars. Detailed indictments, as is the case here, obviate the need for the filing of particulars. *See United States v. Cole,* 707 F.Supp. 949, 1001 (N.D. Ill. 1989) (indictment which provided "detailed narrative" of offenses made bill of particulars unnecessary).

The defendant seeks to strike indictment paragraphs 18-23, relating to the conditions and lack of security at the Tidewater site, and paragraphs 24-25, relating to the mercury spill at the Lawn Terrace apartments. These allegations are highly relevant to the charged conduct. Because

the allegations are relevant to the charged conduct, the Court need not reach the question of whether the language in the Indictment is inflammatory or unfairly prejudicial. If an allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, the court should not strike the language. *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990). In any event, the allegations and the evidence supporting them are not unfairly prejudicial to the defendant, and therefore should not be stricken from the indictment.

**A. The Allegations as to the Conditions at Tidewater are Relevant and Fair**

As discussed more fully in the *United States' Memorandum of Law in Support of Its Objection to Defendant's Motion in Limine to Exclude Reference at Trial to the Physical Conditions of and Lack of Security at the Tidewater Site* (and particularly at pages 2-5 of that Memorandum of Law, which is the United States incorporates into its objection to the instant motion), the manner in which the defendant stored the mercury is relevant to the determination of whether or not it is a waste. Southern Union was not using the mercury stored at Tidewater in any process as part of its business. The loose mercury was stored in glass jars, plastic jugs and an old paint can.[1] The obsolete mercury-containing gas regulators were stored in kiddie pools, until they became too numerous, at which time they were left on the floor. The building in which the mercury was stored was not well-maintained and often exposed to the elements via broken windows and doors. Extensive graffiti was a testament to how often the building was visited by trespassers. After several years of a regular (albeit minimal) security presence at the Tidewater site, Southern Union cut back on security as the facility became less important to the business

[1/] By contrast, the mercury that was shipped to Bethlehem Apparatus was held in steel flasks, specifically designed to transport mercury.

and evolved into a convenient, out of the way place to store its mercury waste.[2]

The conditions at Tidewater and the lack of security also are relevant to the defendant's mental state. To prove the RCRA counts, the government must prove that the defendant had knowledge of the facts and circumstances that made the mercury at Tidewater a waste.[3] The manner in which the mercury was stored, as described above, is among the underlying facts that show that the mercury a waste. Accordingly, the conditions at Tidewater are relevant to the mental state element of the RCRA counts.

Finally, the conditions at Tidewater and lack of security are relevant to the defendant's failure to obtain a hazardous waste storage permit. The primary reason for requiring permits to store hazardous wastes is to enable regulators to track the waste during its entire life cycle so they can ensure that the waste is safely and properly stored, appropriately labeled, and that the public and the environment are sufficiently protected. The manner in which Southern Union was storing its mercury would have made it impossible for them to obtain a permit without significantly improving the storage conditions, posting labeling and warning signs, and taking steps to prevent regular access to the storage area by members of the public. *See, e.g., United*

---

[2/] In amending its definition of solid waste in 1985, the Environmental Protection Agency ("EPA") specifically discussed indications of sham recycling, including indications that "the secondary materials are not handled in a manner consistent with their use as raw materials or commercial product substitutes." 50 F.R. 614, 638. EPA's preamble further stated that "if secondary materials are stored or handled in a manner that does not guard against significant economic loss (i.e., the secondary materials are stored in leaking surface impoundments, or are lost through fires or explosions), there is a strong suggestion that the activity is not legitimate recycling." *Id.* Thus, EPA considered the manner in which materials were stored to be highly relevant to the specific issue in dispute in this case—whether the mercury was waste or something that was to be legitimately recycled.

[3/] The government is not required to prove that the defendant knew the mercury was a listed waste or identified as hazardous waste under the statute or that the waste was defined as hazardous waste within the meaning of the regulations. *See United States v. Kelley Technical Coatings, Inc.*, 157 F.3d 432, 436-38 (6th Cir. 1998); *United States v. Laughlin*, 10 F.3d 961, 965 (2d Cir. 1993).

*States v. Dee*, 912 F.2d 741, 747 (4th Cir. 1990) (rejecting defendant's argument that "'[s]loppy storage procedures is [sic] not a crime," stating that "[n]egligent and inept storage of hazardous waste is one of the evils that RCRA was designed to prevent, and § 6928(d) makes such egregious conduct a crime.").

**B. The Lawn Terrace Allegations are Relevant and Fair**

The mercury spill at the Lawn Terrace apartments also is relevant to the charged conduct. In response to the defendant's allegations that the charging language in ¶¶24 and 25 is irrelevant and "inflammatory", the government incorporates the entirety of the *United States' Memorandum of Law in Support of Its Objection to Defendant's Motion in Limine to Exclude Evidence at Trial of the Discovery of Mercury and Related Events at the Lawn Terrace Apartment Complex.*

As stated in that Memorandum of Law (including in the factual proffer), evidence relating to the travel of liquid mercury from the building where Southern Union stored it to the Lawn Terrace apartment complex is relevant at the most basic level: in order to prove that the substance was indeed mercury (as to both Counts 1 and 2), the government needs to introduce this evidence, at a minimum, because the only liquid mercury seized and tested by EPA laboratory officials was that which was recovered from the Lawn Terrace apartments. Further, Count 2 will require the government to prove a "release" into the environment. The Emergency Planning and Community Right to Know Act ("EPCRA") specifically exempts from its notification requirements "any release which results in exposure to persons solely within the site or sites on which a facility is located." 42 U.S.C. §11004(a)(4). Therefore, the government will be entitled to present evidence – and present the jury with the charging language in ¶¶24 and 25

– so that it can prove exposure to persons who were outside of the Tidewater site.

As to unfair prejudice, it is difficult to follow the defendant's argument that the Lawn Terrace allegations are "inflammatory." Paragraph 24 simply states raw facts: that youths broke into the defendant's facility, and took the mercury back to a nearby apartment complex, where it was further spilled. There is no mention of apartment contamination, resident evacuation, and subsequent remediation. Similarly, the second sentence of ¶25 simply states the bald fact that "[t]he mercury spilled at the apartment complex also remained on the ground and accessible to the public." On its face, there is nothing in these allegations which is "shocking or heinous [and, thus,] likely to inflame the jury." *United States v. Varoudakis,* 233 F.3d 113, 122 (1st Cir.2000).

Likewise, the allegations regarding the conditions and security at Tidewater are not written in such a way as to inflame the jury. *See United States v. Marshall,* 985 F.2d 901, 905-906 (7th Cir. 1993) (court did not err in failing to strike as surplusage 93 overt acts). Here, even the defendant characterized the conditions at the Tidewater facility as "less than ideal." (Def. Mot. to Strike at 1). Thus, allegations of those "less than ideal" conditions are hardly the type of shocking or heinous allegations likely to inflame a jury. It is hard to imagine how a jury could be inflamed by poor housekeeping, overgrown vegetation or overdue repair work. Similarly, the Lawn Terrace allegations merely state bald facts, facts which the government will be entitled to prove in order to satisfy its burden of proof. The defendant can point to nothing in those allegations which is even remotely likely to "inflame" the jury.

## II. CONCLUSION

For the foregoing reasons, the government respectfully asks the Court to deny the defendant's motion.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/ TERRENCE P. DONNELLY
TERRENCE P. DONNELLY
Assistant U. S. Attorney
R.I. Bar No. 3506
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
terrence.donnelly@usdoj.gov

KEVIN CASSIDY
Trial Attorney
Department of Justice
Environmental Crimes Section
601 D St. NW
Washington, DC 20530
Tel (202) 305-0333
kevin.cassidy@usdoj.gov

DIANNE CHABOT
Special Assistant U.S. Attorney
Regional Criminal Enforcement Counsel
U.S. Environmental Protection Agency
One Congress Street
Suite 1100, SAA
Boston, MA 02114-2023
Tel (617) 918-1868
Fax (617) 918-0868
chabot.dianne@epa.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on April 11, 2008, a copy of the within United States' Objection to Defendant's Motion to Strike Surplusage from the Indictment, and its accompanying Memorandum of Law, was filed electronically and is available for viewing and downloading from the ECF system.

Electronic notification:

JOHN A. TARANTINO (#2586)
jtarantino@apslaw.com
PATRICIA K. ROCHA (#2793)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, Rhode Island 02903
Tel: 401-274-7200
Fax: 401-351-4607

GERALD J. PETROS
HINCKLEY, ALLEN & SNYDER LLP
1500 Fleet Center
Providence, RI 02903

/s/ TERRENCE P. DONNELLY
TERRENCE P. DONNELLY
Assistant U. S. Attorney
R.I. Bar No. 3506
U.S. Attorney’s Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
terrence.donnelly@usdoj.gov