**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| vs. | : | CR No. 07-134-S |
| | : | |
| SOUTHERN UNION COMPANY | : | |

**DEFENDANT SOUTHERN UNION COMPANY'S MOTION TO PRECLUDE THE GOVERNMENT'S IMPROPER ENFORCEMENT OF RHODE ISLAND STATE REGULATIONS CONCERNING CONDITIONALLY EXEMPT SMALL QUANTITY GENERATORS**

Defendant Southern Union Company ("Southern Union") hereby moves this honorable Court to preclude the Government from enforcing Rhode Island's state regulations concerning small quantity generators. In support of this Motion, Southern Union relies on the accompanying memorandum of law.

Respectfully submitted,

SOUTHERN UNION COMPANY

By its Attorneys,

/s/ Gerald J. Petros

Gerald J. Petros, No. 2931
Alexandra K. Callam, No. 5658
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
401-274-2000
401-277-9600 (fax)
gpetros@haslaw.com
acallam@haslaw.com

John A. Tarantino, No. 2586
Patricia K. Rocha, No. 2793
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
401-274-7200
401-351-4607 (fax)
jtarantino@apslaw.com
procha@apslaw.com

Daniel J. Fetterman (*pro hac vice*)
Kasowitz, Benson, Torres & Friedman, LLP
1633 Broadway
New York, NY 10019
212-506-1700
212-506-1800 (fax)
dfetterman@kasowitz.com

Dated: September 11, 2008

**CERTIFICATION**

Terrence P. Donnelly
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

Kevin Cassidy
Trial Attorney
Department of Justice
Environmental Crimes Section
601 D St. NW
Washington, DC 20530

Dianne Chabot
Special Assistant U.S. Attorney
Regional Criminal Enforcement Counsel
U.S. Environmental Protection Agency
One Congress Street
Suite 1100, SAA
Boston, MA 02114-2023

I hereby certify that on September 11, 2008, a copy of the foregoing Motion to Preclude Federal Enforcement of Rhode Island State Regulations was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing as indicated on the Notice of Electronic Filing. Parties may accesses this filing through the Court's CM/ECF System.

/s/ Gerald J. Petros

921707 (14015-124285)

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| vs. | : | CR No. 07-134-S |
| | : | |
| SOUTHERN UNION COMPANY | : | |

# DEFENDANT SOUTHERN UNION COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO PRECLUDE FEDERAL ENFORCEMENT OF RHODE ISLAND STATE REGULATIONS CONCERNING CONDITIONALLY EXEMPT SMALL QUANTITY GENERATORS

## I. INTRODUCTION

The Resource Conservation and Recovery Act, 42 U.S.C. § 6901 et seq. ("RCRA"), exempts small quantity generators of hazardous waste from the RCRA Subtitle C hazardous waste management standards.[1] Rhode Island's federally authorized hazardous waste program does not contain this exemption and does regulate this class of hazardous waste generators. The Government seeks to sidestep the federal exemption and enforce the state's small quantity generator regulations against Southern Union Company ("Southern Union"). But RCRA does not authorize the Government to enforce state regulations that are "broader in scope" than the federal program. State regulations are broader in scope when they either (1) expand the size of the regulated community or (2) do not have a counterpart in the federal program.

Here, the state's regulation of conditionally exempt small quantity generators ("CESQGs") is plainly broader in scope than the federal program because it both increases the size of the regulated community (by including CESQGs) and has no counterpart in the federal

---

[1] "Subtitle C" requirements, or regulations, refer to the subtitle of RCRA that contains the provisions governing the management of hazardous waste (42 U.S.C. § 6921 et seq.) and include the regulations found in 40 C.F.R. Parts 262 through 266, 268, 270 and 124.

program. Indeed, the Rhode Island regulation vacates the exemption for CESQG's *in toto*. The Environmental Protection Agency ("EPA") itself recognizes that a state program that vacates the CESQG provision of the federal program is broader in scope, and therefore unenforceable by the federal government. For these reasons, explained more fully below, the Government cannot enforce in this action the state's regulation of CESQGs.

## II. <u>ARGUMENT</u>

### A. <u>The CESQG Provision</u>

CESQGs are not subject to the RCRA Subtitle C hazardous waste management standards. A CESQG is an entity that generates no more than 100 kilograms (220 pounds) of hazardous waste in a calendar month, and accumulates no more than a total of 1,000 kilograms (2,200 pounds) of hazardous waste at any one time.[2] 40 C.F.R. § 261.5. A CESQG is not regulated under the hazardous waste management regulations set forth in 40 C.F.R. Parts 262 through 266, 268, and Parts 270 and 124. 40 C.F.R. § 261.5. Accordingly, a CESQG is not required to obtain a hazardous waste storage permit to store hazardous waste, regardless of the duration of storage.

### B. <u>Authorized State Programs</u>

Under 42 U.S.C. § 6926(b) of RCRA, a state may seek authority from the EPA to administer and enforce its own hazardous waste program. The state's program must meet certain conditions. For example, the state program must be fully equivalent to and consistent with the federal program. *See id*. When EPA authorizes a hazardous waste management program under Section 6926(b), the state's program is implemented "in lieu" of the federal RCRA regulatory program.

---

[2] Universal waste managed under 40 C.F.R. 261.9 and 40 CFR part 273 is not included in this quantity determination. 40 C.F.R. § 261.5(c)(6).

Rhode Island sought and received final authorization from EPA to implement its base hazardous waste management program on January 31, 1986. On October 8, 2002, Rhode Island received final authorization from the EPA to implement additional and revised regulations, including the provision that does not recognize the federal exemption for small quantity generators. *See* 67 Fed. Reg. 51765 (Aug. 9, 2002). The Government contends that because it seeks to enforce the authorized state regulations, it is not burdened by the CESQG provision. *See* Government's Trial Memorandum at 20 n.11 (citing RIHWR § 5.00). The Government is wrong.

**C. The Federal Government Cannot Enforce State Regulations that are <u>Broader in Scope than the Federal Program.</u>**

The Government does not contest the plain provisions of the CESQG regulations. Instead, the Government contends that it can avoid the application of this federal provision by federally enforcing the state regulations which do require generators of very small quantities of hazardous waste to obtain a permit.[3] However, the law does not permit the Government to enforce this aspect of the state regulations because it is broader in scope than the federal regulations.

The federal statute and regulations only authorize the Government to enforce the federal RCRA Subtitle C requirements; they do not permit the Government to enforce state regulations that are broader in scope than the federal regulations.[4] *See* 42 U.S.C. § 6928(a) and (d); 40 C.F.R. § 271.1(i)(2). The federal government's authority to enforce RCRA is limited by its

---

[3] Southern Union maintains that Count I fails because the liquid mercury was not a waste and therefore not regulated under RCRA. However, even if the liquid mercury was a waste, the Government cannot enforce the state permit requirement against Southern Union because the Government cannot enforce the state's regulation of small quantity generators.

[4] It is axiomatic that the Government or EPA can only act to the extent it has the statutory authority to do so. *See, e.g.,* 42 U.S.C. § 6928; *see also United States v. Martinez-Flores*, 428 F.3d 22, 27 (1st Cir. 2005) (discussing scope of the power congressionally conferred to agencies in context of discretion).

determination that a person has "violated or is in violation of any requirement of this subtitle." 42 U.S.C. § 6928(a). By contrast, RCRA permits a state – in addition to adopting the federal RCRA program – to also adopt or enforce requirements that are either "more stringent" or "broader in scope" than the federal program. 40 C.F.R. § 271.1(i). Nevertheless, "[w]here an approved state program has a greater scope of coverage than required by federal law, *the additional coverage is not part of the federally approved program*." 40 C.F.R. § 271.1(i)(2) (emphasis added); *see also United States v. Recticel Foam Corp.*, 858 F. Supp. 726, 743 (E.D. Tenn. 1993) (interpreting 40 C.F.R. § 271.1 and finding state mixture rule "broader in scope" than federal program and therefore unenforceable by federal government). State regulations that are broader in scope do not become part of the federal RCRA program; they do not become a requirement of Subtitle C RCRA regulations; and they cannot be enforced "by the United States in federal court." *Recticel Foam*, 858 F. Supp. at 742; 42 U.S.C. § 6928(a).

After enacting its regulations in this area, EPA published several guidance documents to explain the application of the broader in scope rule. In these Program Implementation Guidance ("PIG") documents, EPA distinguishes between state regulations that are "more stringent" and those that are "broader in scope" than the federal regulations. EPA defined state regulations that provide a "greater scope of coverage" as those "which would increase[ ] the size of the regulated community beyond that of the federal program" or which "do not have a direct Federal counterpart." *See* Lee M. Thomas, Assistant Administrator for Solid Waste, "Determining Whether State Hazardous Waste Management Requirements are Broader in Scope or More

Stringent than the Federal RCRA Program," EPA Memorandum, PIG-84-1 (May 21, 1984) ("1984 Thomas Memo"), attached hereto as Exhibit A.[5]

This definition is buttressed by many other EPA guidance documents. *See, e.g.*, William A. Sullivan, Jr., Enforcement Counsel, "EPA Enforcement of RCRA-Authorized State Hazardous Waste Laws and Regulations," (March 15, 1982) ("1982 Sullivan Memo") (interpreting 40 C.F.R. § 271.1(i)(2) and noting that "requirements which are greater in scope of coverage than the federal regulations are generally those for which no counterpart or corresponding regulations can be found in the federal requirements," and thus would be unenforceable by the federal government), attached hereto as Exhibit B;[6] EPA's "State Authorizations Terms and Topics" (currently on EPA's website at www.epa.gov/epaoswer/hazwaste/state/glossary.htm) (defining the term "broader in scope" to mean "[p]rovisions that (1) allow the state to regulate more entities or wastes than the federal code or (2) add an aspect to a state's statutes of regulation for which there is no federal counterpart in the RCRA statutes of regulations"), attached hereto as Exhibit D; RCRA/Superfund Hotline Monthly Summary, "State Programs," (Sept. 1986) ("1986 RCRA/Superfund Summary") (recognizing that a "state program that is broader in scope than the

---

[5] Guidance letters and memoranda should be given due weight, when they present a consistent and reasonable application of EPA's own regulations. *See, e.g., Skidmore v. Swift & Co*., 323 U.S. 134, 140 (1944) (weight to be given to administrative interpretation depends upon "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all of those factors which give it power to persuade, if lacking power to control"); *see also Martin v. Occupational Safety and Health Review Comm'n*, 499 U.S. 144, 157 (1991) (noting that "[i]nformal interpretations are entitled to some weight on judicial review," and a reviewing court "may certainly consult them" to determine whether they have been "consistently applied"). *Bassiri v. Xerox Corp*., 463 F.3d 927, 933 (9th Cir. 2006) (noting that opinion letters, "as interpretations of that agency's own regulations," are entitled to great judicial deference).

[6] The memorandum was later viewed as containing such valuable guidance that it warranted wider distribution and incorporation into the EPA's system of Program Implementation Guidance. *See* PIG-82-3 (May 17, 1982), attached hereto as Exhibit C.

[f]ederal program" either (i) "expands the size of the regulated community" or (ii) "incorporates program elements that do not have a Federal counterpart"), attached hereto as Exhibit E.

Rhode Island's decision to discard the federal regulatory exemption for CESQGs is a text-book example of a regulation that is broader in scope and therefore cannot be enforced by the federal government. Rule 5.00 of Rhode Island's "Rules and Regulations for Hazardous Waste Management" states:

> These rules shall apply to all generators of hazardous waste. Rhode Island does not recognize federal exemptions for small quantity generators and the small quantity generator provisions of 40 C.F.R. 261.5 . . . do not apply in Rhode Island

This regulation is by declaration broader in scope than the federal regulations. First, it expands the size of the regulated community by requiring permits for this class of small quantity generators – unlike the federal regulations. Second, the state regulation also plainly has no federal counterpart, since it vacates the federal CESQG provision. *See* 40 C.F.R. § 271.1(i)(2). The state regulation is broader in scope if it meets just one of these two prongs included in the test. Here, it meets both prongs.

The court in *Recticel Foam* applied this analysis to the mixture rule. *See* 858 F. Supp. at 743. In *Recticel Foam*, the court considered whether the mixing of two non-hazardous waste streams and one hazardous waste stream for purposes of producing flexible foam constituted a listed hazardous waste under RCRA. *See id*. at 729. The federal mixture rule (authorizing criminal enforcement) had been invalidated prior to the relevant timeframe. *See id*. at 730. However, the federal government argued that the status of the federal mixture rule was irrelevant because the government was enforcing Tennessee state regulations regarding mixtures of hazardous and non-hazardous substances as part of the state's authorized RCRA enforcement program. *See id*. The government's argument was rejected. The *Recticel Foam* court analyzed

the issue under 40 C.F.R. § 271.1 and asked whether the state regulation was "more stringent" than federal law and therefore enforceable, or "broader in scope," and therefore unenforceable. *See id*. at 741-42. Relying on the regulations and EPA guidance memoranda, the court concluded that the state regulation was broader in scope, and therefore unenforceable, because it both increased the size of the regulated community "beyond that of the federal program" and had no direct counterpart in the federal regulatory scheme, since the companion federal rule had been vacated. *Id*. at 742-43.[7] The *Recticel Foam* analysis applies here. Rhode Island's regulation of small quantity generators is broader in scope and therefore federally unenforceable.

Finally, the correctness of this conclusion is validated by EPA's own guidance. In the 1984 PIG, EPA cited a state's failure to include the small quantity generator exemption in its regulatory scheme as an example of a regulation that is broader in scope and therefore not federally enforceable. EPA stated in its guidance that "a lesser amount of waste exempted [by the state] from regulation under the small quantity generator exemption" is a requirement that is broader in scope and not more stringent. 1984 Thomas Memo at 2;[8] *See also* 1986

---

[7] EPA's Region I, in authorizing the Rhode Island hazardous waste program, stated that Rhode Island's regulatory program as compared to the federal program is "more stringent with regard to the regulation of small quantity generators." 67 Fed. Reg. 51765 (H). This conclusion by Region I is entitled to no weight for several reasons. First, it is contrary to RCRA's enforcement provisions. *See* 42 U.S.C. § 6928. Second, it is contrary to EPA's regulations implementing RCRA. 40 C.F.R. § 271.1(i)(2). Third, EPA headquarters, almost 25 years ago, gathered its best minds and considered this precise issue. EPA headquarters determined that a state's decision to regulate small quantity generators is a requirement that is broader in scope, not more stringent. In fact, EPA expressly corrected a statement in an earlier PIG that mirrored the conclusion reached by Region I with respect to Rhode Island's regulation of small quantity generators. EPA's determination has stood, unchallenged and un-amended, for 24 years. The bald assertion by Region I cannot overturn this superior pyramid of authority: statute, regulation, and national guidance. *See United States v. Lachman*, 387 F.3d 42, 50 (1st Cir. 2004) (discussing progression of authority for purposes of interpretation). Moreover, Region I's conclusion is not codified in the Code of Federal Regulations, (40 C.F.R. Part 272, Subpart 00 – Rhode Island) but remains only in the Federal Register. *See, e.g., United States v. Caseer*, 399 F.3d 828, 843 (6th Cir. 2005) (holding that publication of a rule in the Federal Register but not codified in the Code of Federal Regulations does not provide constructive notice of a criminal statute sufficient to satisfy the "knowingly" prong of a criminal statute). In short, Region I's conclusory statement in the Federal Register is entitled to neither weight nor deference.

[8] The EPA includes as examples of "more stringent" regulations a requirement that a fence not only be erected, but that it be of a specific height and material, a requirement that a storage container be color-coded, and that a final cover of a land disposal facility be of a particular material or thickness. *See* 1982 Sullivan Memo at 8.

RCRA/Superfund Summary (listing permits for federally-exempt wastewater treatment units as example of a requirement that is broader in scope); Marcia Williams, Director, Office of Solid Waste, "Response to Region III Implementation and Oversight Issues," at 2 (May 1, 1986) ("1986 Williams Memo") (finding the "lack of the waste exemption/exclusion in the State's program increases the size of the regulated community beyond that of the [f]ederal program," can "be viewed as 'broader in scope,' and therefore is not enforceable by the federal government"), attached hereto as Exhibit F.[9] Thus, EPA – indeed the Government itself – declared decades ago that a state regulation that vacates the CESQG exemption is broader in scope and not enforceable by the federal government. This concession acknowledges the obvious application of the law. The Court need not plow new ground in deciding this motion.

## III. CONCLUSION

The law is clear. The Government's attempt to enforce the state's regulation of CESQGs is impermissible under the federal statute and regulations, and is contrary to explicit EPA guidance documents. For more than twenty-four years, EPA's own guidance documents have informed the regulated community that state regulation of small quantity generators is broader in scope and not subject to federal enforcement. Thus, this Court should preclude the Government from enforcing the state regulations with respect to CESQGs.

The Court should decide this motion before the trial begins because the fundamental question presented will determine the law that forms the basis for the charge brought in Count I.

---

[9] The dictionary definition of "exempt" means to be "freed from an obligation, a duty, or a liability to which others are subject." *The American Heritage College Dictionary* 479 (3d ed. 2000). The absence of an exemption, therefore, by definition, increases the number of persons subject to an obligation, duty or liability. Thus, even the plain meaning of the word "exempt" supports the EPA's view that the absence of an otherwise federally applicable exemption in a state regulation should be viewed as broader in scope – that is, it "expands the size of the regulated community." 1986 RCRA/Superfund Summary at 1.

Does the law permit the federal government to enforce the state's regulation of small quantity generators? Southern Union should know that answer before it opens, examines the Government's witnesses and presents evidence. The alternative places Southern Union in jeopardy. If it embarks on a defense predicated on twenty-four years of established EPA policy, and the Court later accepts the arguments tendered by the Government, Southern Union faces extraordinary prejudice. The absence of a decision would force Southern Union to navigate between Scylla and Charybdis and would violate basic concepts of fairness and due process. On the other hand, a decision causes no unfair prejudice to the Government. Accordingly, the Court should decide this motion before the parties present their opening arguments.

Respectfully submitted,

SOUTHERN UNION COMPANY

By its Attorneys,

/s/ Gerald J. Petros
Gerald J. Petros, No. 2931
Alexandra K. Callam, No. 5358
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
401-274-2000
401-277-9600 (fax)
gpetros@haslaw.com
acallam@hawlaw.com

John A. Tarantino, No. 2586
Patricia K. Rocha, No. 2793
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903
401-274-7200
401-351-4607 (fax)
jtarantino@apslaw.com
procha@apslaw.com

Daniel J. Fetterman (*pro hac vice*)
Kasowitz, Benson, Torres & Friedman, LLP
1633 Broadway
New York, NY 10019
212-506-1700
212-506-1800 (fax)
dfetterman@kasowitz.com

Dated: September 11, 2008

**CERTIFICATION**

Terrence P. Donnelly
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

Dianne Chabot
Special Assistant U.S. Attorney
Regional Criminal Enforcement Counsel
U.S. Environmental Protection Agency
One Congress Street
Suite 1100, SAA
Boston, MA 02114-2023

Kevin Cassidy
Trial Attorney
Department of Justice
Environmental Crimes Section
601 D St. NW
Washington, DC 20530

I hereby certify that on September 11, 2008, a copy of the foregoing Memorandum in Support of Its Motion to Preclude Federal Enforcement of Rhode Island State Regulations Concerning Conditionally Exempt Small Quantity Generators was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing as indicated on the Notice of Electronic Filing. Parties may accesses this filing through the Court's CM/ECF System.

/s/ Gerald J. Petros

923462v1