# EXHIBIT F

PPC 9541.1986(10)

RESPONSE TO REGION III IMPLEMENTATION
AND OVERSIGHT ISSUES

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

MAY 1, 1986

MEMORANDUM

SUBJECT: Response to Region III Implementation and
Oversight Issues

FROM: Marcia E. Williams, Director
Office of Solid Waste (WH-563)

Gene Lucero, Director
Office of Waste Programs Enforcement (WH-527)

TO: Stephen R. Wassersug, Director
Hazardous Waste Management Division (3HW00)

Thank you for your memorandum of March 5, 1986, in which you asked for clarification on several issues relating to implementation and oversight of the RCRA hazardous waste program in Pennsylvania. This memo addresses your concerns in the same order in which you stated them in your memorandum.

1. Is there still a need to maintain a major handlers list?

Although the major handlers list played a role in the past to establish inspection frequencies and targets and permit oversight priorities, it does not translate to the existing needs of the Agency. You should amend your States' MOAs to use designations which communicate the priorities met in each year's RIP. For example, facilities presenting immediate threats, government facilities, and land disposal facilities, would be appropriate designations for inspections and oversight in FY 86 & FY 87. Because of the recent policy/guidance set forth in the RIP (e.g., inspection targets in FY 86 RIP). PICs 83-1 and 82-2 have been superseded and are presently inoperative with regard to inspections and oversight. As you point out, a major facility desolation does need to be maintained to guide the permitting actions of §§124.7 and 124.8.

2. What happens to EPA's oversight responsibility (especially direct enforcement authority) when EPA makes regulatory changes which narrow the "scope" of the original program?

The example you related with this question refers to EPA removing a waste from the lists in Part 261, where an authorized State program continues to include the waste. In this situation, the State requirement would increase the size of the regulating community and would be an aspect of the State program which goes beyond the scope of the Federal program. Therefore, EPA would no longer enforce the hazardous waste activity associated with the Federally deregulated waste. This aspect of the State program would not be subject to EPA oversight.

However, EPA's oversight and enforcement responsibilities are different where EPA reduces the stringency of a requirement (for example, requiring a biennial report instead of an annual report). In that case, the State requirement (i.e., annual report) becomes more stringent than the corresponding Federal requirement. EPA would enforce and otherwise oversee the more stringent State provision, since more stringent provisions are still considered part of the State's authorized program.

3. You asked Headquarters to make a specific determination regarding the "more stringent" or "broader in scope" nature of State standards for managing a material which EPA has determined to not be a hazardous waste.

In the situation you described, the lack of the waste exemption/exclusion in the State's program increases the size of the regulated community beyond that of the Federal program. As you indicated, this part of the Pennsylvania program could be viewed as "broader in scope". We agree with this assessment. Therefore, EPA does not have an oversight responsibility and would not enforce the State's provision.

I hope that the above discussion answers your questions and concerns regarding major facilities and oversight of approved State programs.

cc: Susan Schmedes, OGC
Virginia Steiner, OWPE