**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| | * | |
| | * | |
| v. | * | CR No. 07-134S |
| | * | |
| | * | |
| SOUTHERN UNION COMPANY | * | |

**UNITED STATES' MOTION *IN LIMINE* TO EXCLUDE REFERENCE TO AND/OR EVIDENCE OF EPA LETTERS**

The defendant has repeatedly cited to various letters authored by EPA officials to support its misguided legal theory in this case. For the reasons stated in the attached Memorandum of Law, the United States moves *in limine* to exclude any evidence of those letters, as well as any reference to them in the presence of the jury.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/ TERRENCE P. DONNELLY
TERRENCE P. DONNELLY
Assistant U. S. Attorney
R.I. Bar No. 3506
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
terrence.donnelly@usdoj.gov

KEVIN CASSIDY
Trial Attorney
Department of Justice
Environmental Crimes Section
601 D St. NW
Washington, DC 20530
Tel (202) 305-0333
kevin.cassidy@usdoj.gov

DIANNE CHABOT
Special Assistant U.S. Attorney
Regional Criminal Enforcement Counsel
U.S. Environmental Protection Agency
One Congress Street
Suite 1100, SAA
Boston, MA 02114-2023
Tel (617) 918-1868
Fax (617) 918-0868
chabot.dianne@epa.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| | * | |
| | * | |
| v. | * | CR No. 07-134S |
| | * | |
| | * | |
| SOUTHERN UNION COMPANY | * | |

**UNITED STATES' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF EPA LETTERS**

As is obvious from the defendant's filings in its recent motion regarding the enforcement of Rhode Island regulations, as well as Southern Union Company's Motion to Dismiss and other filings,[1] the defendant fully intends on seeking to introduce guidance letters written by EPA employees. These letters are all addressed to facilities other than SUC in response to site-specific inquiries that have nothing whatsoever to do with SUC's storage of mercury at the Tidewater facility. The most frequently referenced letter cited by the defendant is a 1986 letter to Bethlehem Apparatus Company, which was attached to the Defendant's Motion to Dismiss. These letters should be excluded under Federal Rules of Evidence 401 and 403. The letters do not make any fact of consequence more or less probable, and their admission is likely to confuse and mislead the jury. The government has already addressed the merits of the evidentiary value of the EPA letters, first in its response to the defendant's Motion to Dismiss (see *Government's*

[1] See, e.g., *Defendant Southern Union Company's Motion to Preclude the Government's Improper Enforcement of Rhode Island State Regulations Concerning Conditionally Exempt Small Quantity Generators* (Exhibits A through F), *Defendant Southern Union Company's Motion to Dismiss Counts I and III of the Indictment* (Exhibit A), *Defendant Southern Union Company's Pretrial Memorandum* (Exhibits A through E), and *Southern Union Company's Objection to Government's Motion in Limine to Exclude Testimony* (proposed testimony of defense expert will comment on EPA guidance letters)

*Memorandum of Law in Support of Its Objection to Defendant's Motion to Dismiss Counts 1 and 3 of the Indictment* at pp. 2, 9, 11-15), and also in the *United States' Trial Memorandum* (at pp. 26-28). The arguments advanced in those pleadings are incorporated by reference. However, they can be summarized as follows.

First, the government is not aware of any Southern Union official who relied on these letters, and in particular the Bethlehem Apparatus letter, during the time the offense was being committed. Indeed, the government is not aware of any SUC official who was even aware of *any* of the letters referenced by the defendant. Thus, the letters would certainly be irrelevant to the defendant's knowledge and intent. Even if an SUC official claimed to have relied on an EPA guidance letter, what it *believed* to be the law at the time it stored the mercury is irrelevant in any event. It is well-settled that RCRA does not require that the defendant act with the specific intent to violate the law or with specific knowledge of the particular regulatory program promulgated under RCRA. See United States v. Kelley Technical Coatings, Inc., 157 F.3d 432, 436-38 (6th Cir. 1998); United States v. Laughlin, 10 F.3d 961, 965-67 (2d Cir. 1993); United States v. Dee, 912 F.2d 741 (4th Cir. 1990); United States v. Hayes Int'l Corp, 786 F.2d 1499 (11th Cir. 1986).

Second, the letters themselves are irrelevant because EPA specifically limits their effect to the particular party seeking the advice - the letters are explicitly site-specific. The letters can be found on EPA's website, which contains the disclaimer:

> (t)his database. .. and the documents cited by this database are not intended to serve as statements of EPA policy. The database should not be cited or quoted and cannot be relied upon to create any substantive or procedural rights enforceable by any party in litigation with the United States . . . For the most part, RCRA compliance is a site-specific matter and most appropriately handled by your EPA Regional Office and/or State Authority. You should

> confirm any compliance determinations with your appropriate EPA Regional or State Environmental Agency in all cases.

The entire disclaimer is attached as Exhibit 1, and can be found at http://www.epa.gov/epawaste/inforesources/online/index.htm. In addition, when accessing the Bethlehem Apparatus letter on EPA's website, a cover sheet appears indicating that the document is not an official EPA policy. Id.

The Supreme Court has also limited the use of EPA regulatory letters. The Bethlehem letter cited by the Defendant is a response by one individual at EPA to a conscientious facility's inquiry about its operations. That letter does not have the force of law. When, in support of its arguments in a Clean Air Act appeal, Duke Energy Corporation cited to a letter and memorandum written in 1981 by EPA's then Director of Stationary Source Enforcement Edward R. Reich, the United States Supreme Court recently observed, "...it answers the citation of the Reich letters to realize that an isolated opinion of an agency official does not authorize a court to read a regulation inconsistently with its language." Environmental Defense et al. v. Duke Energy Corp., 127 S. Ct. 1423, 1436 (2007).

Third, even if the letters had any legal effect, they are nevertheless irrelevant because they simply do not apply to the facts and circumstances found at Tidewater. In the Bethlehem letter, for example, EPA responded to Bethlehem Apparatus' February 1986 inquiry as to whether or not the mercury that Bethlehem actually is recycling and is turning into a commercial product is a waste *as to Bethlehem Apparatus*. EPA informed Bethlehem Apparatus that the mercury "that is received *and* refined *at your facility* is not a solid waste . . . the material does not need to be manifested to your facility, you need not comply with the storage requirements, etc." (emphasis

added). By its very terms, this letter does not speak to the mercury stored in deplorable conditions at Tidewater for nearly two years, even assuming arguendo that the mercury might some day make its way to Bethlehem. The letter does not make any fact of consequence more or less probable.

According to its website, Bethlehem Apparatus Company is the largest EPA-approved and permitted mercury storage and recycling facility in North America and is a global supplier of commodity grade mercury. The Bethlehem letter is EPA's facility-specific response to a request made by that Company in 1986 regarding its management of the mercury that it used to make its mercury product. See www.BethlehemApparauts.com.

On this point, the defendant essentially argues that while storing its old mercury in miscellaneous jars and plastic containers at the oft-vandalized Tidewater facility, Defendant stands in the same shoes as the EPA- approved and permitted Bethlehem Apparatus mercury recycling facility with its 24-hour security. This is absurd. Indeed, it is interesting to imagine the letter that the Defendant might have written to EPA to seek confirmation that the Bethlehem Apparatus analysis applied to mercury stored at Tidewater. Had the deplorable conditions and speculative accumulation at Tidewater been disclosed in such a request, it is easy to imagine EPA's response.

Finally, even if the EPA letters were somehow relevant, any potential relevance is substantially outweighed by the likelihood that the letters will confuse and mislead the jury. It will be very confusing for the jury to be presented with letters by miscellaneous EPA employees that have nothing to do with the Defendant's operations, and that purport to interpret the law in a case in which mistake-of-law is not a defense. Accordingly, the letters should be excluded under

Federal Rule of Evidence 403.

Further lending to the risk of confusion is the fact that should this Court allow the defendant to admit these letters, the parties may find themselves in a "battle of the letters." There are letters and memos - uncited by the defendant - that support the Government's position on the legal issues.[2]

---

[2] For example, there are documents which support the government's legal position on what is meant by "spent" material. There are letters that describe commercial chemical products as those that are unused. There is even a 1994 letter from EPA to the New York Gas Group responding to the Gas Group's inquiry about the regulatory status of mercury-containing regulators. Because of the EPA's then-proposed universal waste rule regarding mercury-containing thermostats, the New York Department of Environmental Conservation ("DEC") had refused to permit the New York Gas Group to consider the mercury in used equipment a commercial chemical product. The Gas Group sought EPA's approval of an interpretation of the regulations that would make the regulators unregulated "scrap metal." In EPA's response, EPA not only concluded that the regulators were not scrap metal, but also stated that

> EPA agrees with the New York State position that used equipment of this type cannot be considered a commercial chemical product. Based on our understanding of this material, we believe that when removed from service, natural gas regulators containing mercury best meet the definition of a spent material. 40 C.F.R. 261.1(c)(1). Therefore, the regulators are solid wastes and hazardous wastes when sent for reclamation. 40 C.F.R. 261.2(c)(3). These natural gas regulators would be subject to applicable RCRA Subtitle C regulations, 40 C.F.R. Parts 262-265, 268 and 270.

See Letter from EPA to the New York Gas Group, dated July 29, 1994 attached hereto as Exhibit 2. If the Defendant had followed the New York Gas Group's example and written to EPA about its storage of mercury at Tidewater, the unfortunate events of October 19, 2004 likely would have been avoided. Moreover, the significance of EPA's classification of mercury-containing thermostats as universal waste in 1995, and its relevance to the "waste" issue that the Defendant keeps raising through these EPA letters is worth underscoring. EPA's proposed (and later final) universal waste regulations relating to mercury-containing thermostats stated the following with regard to mercury that might leak out of the thermostats: "If **the mercury**, residues, and or/ **other solid waste** exhibits a characteristic of hazardous waste, it must be managed in compliance with the requirements of 40 C.F.R. parts 260-272." See 60 Fed. Reg. 25492 (May 11, 1995). When EPA added mercury-containing equipment to the universal waste rule in 2005, it repeated this exact same language. See 40 C.F.R. 273.13(c)(4); 70 Fed. Reg. 45508, 45521 (August 5, 2005). Whatever individual EPA employees may have said in the letters cited by the Defendant, this official EPA regulation seems to have put the issue to rest.

## III. CONCLUSION

For the foregoing reasons, the government respectfully asks the Court to exclude any evidence regarding the EPA letters, as well as any reference to same during opening statements.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/ TERRENCE P. DONNELLY
TERRENCE P. DONNELLY
Assistant U. S. Attorney
R.I. Bar No. 3506
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
terrence.donnelly@usdoj.gov

KEVIN CASSIDY
Trial Attorney
Department of Justice
Environmental Crimes Section
601 D St. NW
Washington, DC 20530
Tel (202) 305-0333
kevin.cassidy@usdoj.gov

DIANNE CHABOT
Special Assistant U.S. Attorney
Regional Criminal Enforcement Counsel
U.S. Environmental Protection Agency
One Congress Street
Suite 1100, SAA
Boston, MA 02114-2023
Tel (617) 918-1868
Fax (617) 918-0868
chabot.dianne@epa.gov

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2008, at approximately 11:00pm, a copy of the within United States' Motion in Limine to Exclude Evidence of EPA Letters, and its accompanying Memorandum of Law, was filed electronically and is available for viewing and downloading from the ECF system.

Electronic notification:

JOHN A. TARANTINO (#2586)
jtarantino@apslaw.com
PATRICIA K. ROCHA (#2793)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, Rhode Island 02903
Tel: 401-274-7200
Fax: 401-351-4607

GERALD J. PETROS
HINCKLEY, ALLEN & SNYDER LLP
1500 Fleet Center
Providence, RI 02903

/s/ TERRENCE P. DONNELLY
TERRENCE P. DONNELLY
Assistant U. S. Attorney
R.I. Bar No. 3506
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
terrence.donnelly@usdoj.gov