**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

UNITED STATES OF AMERICA *
*
*
*
v. * CR No. 07-134S
*
*
SOUTHERN UNION COMPANY *

**UNITED STATES' CONSOLIDATED RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS TO PRECLUDE ENFORCEMENT OF RHODE ISLAND'S REGULATIONS REGARDING VERY SMALL QUANTITY GENERATORS AND TO DETERMINE WHETHER UNDER EPCRA THE RELEASE OF MERCURY AT THE LAWN TERRACE APARTMENT COMPLEX CONSTITUTES A SEPARATE RELEASE**

Despite the Court's April, 2008 Motion deadline, on September 8, 2008, nine business days before trial, the Defendant asked the Court to hear arguments and to decide whether "to preclude the Government from enforcing Rhode Island's state regulations concerning small quantity generators" and "to determine whether under EPCRA the release of mercury at the Lawn Terrace Apartment Complex constitutes a separate release." The Government objects to both motions.

## I. The Very Small Quantity Generator Exemption Does Not Apply to the Tidewater Facility

The federal RCRA regulations provide very small quantity generators that store their waste at the site of generation a conditional exemption from some of RCRA's regulatory requirements. This exemption is not applicable to the defendant's unpermitted storage at the Tidewater facility for two

reasons.

First, the defendant did not store its liquid mercury waste at the site of generation, but instead transported it to the Tidewater facility for storage. Thus, during the period alleged in the Indictment, the Defendant was not a conditionally exempt small quantity generator, or any other kind of generator for that matter, *at the Tidewater facility.* On the contrary, the Defendant was operating an unpermitted off-site storage facility which is prohibited no matter how much waste one generates.

Second, even if the EPA exemption were applicable to the Defendant's conduct at Tidewater, the exemption does not exist under the Rhode Island's regulations, which are controlling on this question. The federal regulatory scheme allows states to impose more stringent requirements than the federal government. Accordingly, the Rhode Island regulations are federally enforceable.

## A. The Federal and State Regulations

### 1. The Permit Requirements

Unless specifically excluded, all persons who treat, store, or dispose of hazardous waste must have a permit. See 42 U.S.C. § 6925(a), (e), 40 C.F.R. § 270.1(c). The permit requirements are set out at 40 C.F.R. § 270. See also Rhode Island Hazardous Waste Regulations ("RIHWR") § 7.00. In general, in order to satisfy the permit requirements, a facility must have applied for

and received a permit from EPA or an authorized state like the State of Rhode Island.

Forty C.F.R 270.1(c)(2) specifically excludes certain categories of persons from the permit requirements. Among those excluded are generators[1] that accumulate hazardous waste **"on-site"** in accordance with certain conditions set forth at 40 C.F.R. §§ 262.34, and 261.5 (the CESQG provision). Put simply, the RCRA regulations give operating facilities a period of time to collect waste on-site in a responsible manner prior to its shipment to a proper disposal or recycling facility. "On site" is defined as the same or geographically contiguous property which may be divided by public or private right-of-way, provided the entrance and exit between the properties is at a cross-roads intersection, and access is by crossing as opposed to going along the right-of-way. 40 C.F.R. 260.10, RIHWR 3.0. Shipment of waste to an unpermitted storage facility across town, in another city, or in another state is not "on site" accumulation.

The defendant did not store its liquid mercury waste at the site of generation, but instead transported it to the Tidewater facility for storage. Thus, during the period alleged in the Indictment, the defendant was not a generator *at the Tidewater*

[1] Generator is defined as "any person, *by site*, whose act or process produces hazardous waste identified or listed in part 261 of this chapter or whose act first causes a hazardous waste to become subject to regulation." (emphasis added) 40 C.F.R. § 260.10. See also RIHWR § 3.31.

*facility* and thus was not a conditionally exempt small quantity generator, as described below.

**2. The Regulation of Very Small Quantity Generators**

Under the federal Conditionally Exempt Small Quantity Generator ("CESQG") regulations, a generator, *by site of generation* is a CESQG in a calendar month if he generates at that site no more than 100 kilograms of hazardous waste. 40 C.F.R. 261.5. A CESQG is allowed to accumulate its waste "on-site," and is exempt from many of the RCRA regulations that apply to other generators, including the permit requirement, provided the CESQG:

> (1) determine whether its waste was a hazardous waste under 40 C.F.R. § 262.11. 40 C.F.R. § 261.5(g)(1);
>
> (2) not accumulate at any time more than a total of 1000 kilograms of hazardous waste. 40 C.F.R. § 261.5(g)(2); and
>
> (3) either treat or dispose of its hazardous waste in a permitted or authorized on-site facility, or ensure delivery to a permitted or authorized off-site treatment, storage, or disposal facility.

40 C.F.R. 261.5(g). Thus, CESQGs are not totally exempt from RCRA's requirements. Significantly, consistent with RCRA's cradle-to-grave management objectives, CESQGs are not authorized to send their waste to unpermitted storage facilities in lieu of "ensuring delivery" to a permitted disposal or recycling facility. Id. See also 64 Fed. Reg. 37623, 37626 (July 12, 1999)and 40 C.F.R. § 262.90. (EPA rule-making allowing

participating New York utilities to consolidate hazardous waste generated at various locations at utility-owned, staffed, and secure central collection facilities, the location of which must be subject to public comment and approved by EPA, *provided* the waste is stored in accordance with the waste management requirements of the rule.) The special rule-making was necessary because "RCRA regulations generally do not allow the shipment to, or consolidation of, hazardous waste at off-site facilities other than a permitted or interim status TSDF [treatment, storage, disposal facility] or other designated facility." Id. at 37626)[2] The Defendant's activities at the Tidewater facility simply do not fit within the terms of the exemption.

Like the federal regulations, Rhode Island's regulations exclude from the storage permit requirements waste stored *on-site* for a particular period of time (90 days), provided it is managed in accordance with certain requirements. Rhode Island, however, does not "ratchet down" the requirements based upon the amount of waste one generates. See RIHWR § 5.0. Thus, all Rhode Island

[2] This rule making was done under EPA's "Project XL" ("eXellence and Leadership"). See 60 FR 27282 (May 23, 1985). Project XL provided a limited number of private and public entities an opportunity to develop their own projects to provide regulatory flexibility while achieving environmental protection. One rationale for granting the utilities the regulatory flexibility described above was a desire to enable the utilities to store waste at an approved central facility rather than at numerous remote, unstaffed generation locations where the waste might be subject to releases as a result of accidents or vandalism. 64 Fed. Reg. 37623, 37626.

generators must comply with the requirements that apply to generators of more than 1000 kilograms of hazardous waste under the federal regulations. Those regulations permit a facility to store waste on site for 90 days IF the waste is managed properly. See 40 C.F.R. § 262.34(a); RIHWMR 5.02. In this regard, Rhode Island regulations are more stringent than the federal regulations, as EPA determined in 2002 when it approved additions to Rhode Island's authorized hazardous waste program.

**B. EPA's Determination that the Rhode Island Regulations at Issue are More Stringent**

Pursuant to 42 U.S.C. 6926(b), any state seeking to administer a hazardous waste program must submit to EPA an application for program authorization. Upon review of the State's entire program submission, EPA is required to determine the extent to which the State's program is or is not equivalent to the federal program. Id., 40 C.F.R. 271.4. Once approved, the State program operates in lieu of the federal program. 42 U.S.C. 6926(b). EPA can enforce the State's requirements, including those that are more stringent, but not those that are greater in scope of coverage. 40 C.F.R. 271.1(I).

On August 9, 2002, pursuant to 42 U.S.C. 6926(b), EPA granted final authorization of modifications to the State of Rhode Island's hazardous waste program.[3] 67 Fed. Reg. 51765

[3] EPA has delegated the authority for making these decisions to the EPA Regions.

(August 8, 2002) (attached as Exhibit A). With regard to differences between the Rhode Island and federal regulations, EPA stated:

> The major difference in Rhode Island's regulatory program as compared to the federal program is that it is more stringent with regard to the regulation of small quantity generators (SQGs), ie., generators or less than 1,0000 kg/month, and conditionally exempt small quantity generators (CESQGs) . . . the requirements referenced above are part of Rhode Island's authorized program and are federally enforceable.

67 Fed. Reg. 51765, 51767.[4]

Pursuant to 42 U.S.C. 6976(b), review of EPA's action in granting a state authorization may be sought by any interested person within ninety days of the decision in the Circuit Court of Appeals. Section 6976(b) provides that if a party fails to seek

---

[4] EPA's authorization also listed requirements that go beyond the scope of the federal program. For example, the Rhode Island regulations make PCBs a hazardous waste; PCBs are not a hazardous waste under the federal RCRA program. See 67 Fed. Reg. 51765, 51767-51768. A State's listing of hazardous wastes that are not included in the Federal program is a classic way in which a state's program is broader-in-scope than the federal program. It is this classic example that the Court concluded was broader-in-scope in United States v. Recticel Foam, 858 F. Supp. 726 (1993)(state's regulation of mixtures of wastes and other substances which had no federal counterpart was broader in scope). Accordingly, the Recticel case adds little to the current analysis. Also, the Government notes that the defendant referred in its Memorandum to its proposed expert on the law, Marcia Williams. To the extent that the current motion was filed in part to support the defendant's position that Ms. Williams should testify, the Government refers the Court to its *Motion in Limine* to preclude that testimony. It is the Court that should instruct the jury on the law, not Ms. Williams.

judicial review of the EPA Administrator's approval of a state regulatory scheme, that party cannot later complain to a Court overseeing a civil or criminal enforcement action:

> action of the Administrator with respect to which review could have been obtained under this subsection shall not be subject to judicial review in civil or criminal proceedings for enforcement.

42 U.S.C. §6976. The statute is clear. The Defendant cannot in this criminal proceeding in District Court seek review of EPA's decision on Rhode Island's program authorization.[5]

Finally, as described above, EPA's conclusion that the Rhode Island regulations are more stringent makes sense. With respect to its regulation of very small quantity generators, Rhode Island is not regulating a class of generators that is totally unregulated by EPA; Rhode Island is simply regulating those very small quantity generators to a greater degree. Accordingly, EPA properly concluded that Rhode Island regulations are more stringent and federally enforceable.

---

[5] The defendant asks that the Court overrule EPA's 2002 rule-making based on a 24 year old EPA "guidance" document which the defendant represents was prepared by EPA's "best minds." Irrespective of the intelligence of the individuals working at EPA back in 1984, the government has found no authority supporting such an extraordinary measure. The pyramid of authority cited in Defendant's footnote 7 consists of a federal statute that permits EPA enforcement of state regulations, see United States v. McDonald & Watson Oil Co., 933 F 2d. 35 (1st Cir. 1991); a regulation that does the same; and a 24 year old EPA guidance that makes a general reference to regulations that have been amended several times since 1984, once at Congress' direction in Hazardous and Solid Waste Amendments of 1984 (HSWA), Publ. L. 98-616 (November 8, 1984).

For the reasons stated herein, the Government respectfully requests that the Court deny the Defendant's Motion to Preclude Enforcement of Rhode Island's Regulations Regarding Very Small Quantity Generators.

**II. The Release of Mercury at Lawn Terrace Apartments Is Not a Separate Release**

This Court asked the parties to brief "fundamental legal issues." In response, the defendant filed a new breed of motion, which appears to the government to be a combination of an out-of-time motion to dismiss and a motion for declaratory judgement. As it attempted to do with its initial motions to dismiss, the defendant is asking this Court to usurp the jury's fact-finding role based on an inaccurate characterization of the indictment and misstatements of the law. However the motion is styled by the defense, it is inappropriate at this stage in a criminal case, and it should be denied.

The defendant's "Motion to Determine" fails for at least five reasons. First, the Indictment sufficiently alleges the crime charged under Fed. R. Crim. P. 7. Second, several days after the mercury was discovered at the Lawn Terrace apartments, the defendant provided written follow-up notice, as required under EPCRA, to the Pawtucket Fire Department and the Rhode Island Fire Marshall. This demonstrated the defendant's clear belief at the time of the incident that it had a duty to report the release at the apartment complex and that it did not consider

the Lawn Terrace mercury to constitute a separate release. Third, the defendant's motion raises clear issues of fact that are for the jury to decide, for example: What did the defendant know about the quantities of mercury that were stored at Tidewater as compared to the quantities that had been accounted for during the cleanup, and when did the defendant know this? Fourth, Congress did not provide an exemption to the reporting requirement for situations when the release was caused, in part, by third parties. Fifth, the defendant's narrow reading would severely undermine the purpose of EPCRA, which is to keep communities safe and assist local emergency responders in protecting the public and the environment.

**A. <u>The Indictment Is Sufficient</u>**

The defendant claims that the Indictment "does not allege that the Tidewater release - the only release Southern Union did not report - extended off the Tidewater facility boundaries." Def. Mem. at 13. This statement mischaracterizes the indictment. This Court has already elucidated the standard of review for the sufficiency of an indictment (see 8/5/08 Order at 4-5), and the government need not repeat that correct statement of the law here.

Pursuant to the standard set forth by this Court and the First Circuit, the indictment is more than sufficient. The charging language of Count Two the Indictment tracks EPCRA's

statutory language. Further, the indictment provides additional facts that put the defendant on notice that the release charged in Count Two included the release of mercury at the nearby apartment complex. See Indictment ¶ 24 ("The youths brought some of the mercury back to a nearby apartment complex and into one of the homes there, and spread it around the apartment complex's grounds") and ¶ 25 ("For approximately the next three weeks . . . [t]he mercury spilled at the apartment complex also remained on the ground and accessible to the public"). Accordingly, to the extent the defendant's request is based on a perceived insufficiency of the indictment, its motion should be denied.

### B. Defendant Southern Union Has Already Admitted that It Had a Duty to Notify Local Emergency Authorities of the Release at Lawn Terrace

EPCRA not only requires immediate notification of releases of hazardous chemicals from facilities that store them, but it also requires written followup emergency notice "setting forth and updating the information required [under the immediate notice provision], and including additional information" regarding actions taken, known or anticipated health risks, and advice relating to medical attention for exposed individuals. 42 U.S.C. § 11004(c). On October 26, 2004, after emergency responders were aware of the mercury release despite the defendant's failure to immediately notify, the defendant provided the written followup emergency notice as required by EPCRA for the "Tidewater and

Pleasant Street Mercury Release." See Attachment B. The letter correctly and logically treated the release of mercury at Tidewater and Pleasant Street as one release, and it is a clear admission that the defendant understood at the time of the release that it had a duty to provide notification about the Lawn Terrace release.[6] As Southern Union no doubt concluded at the time, all of the mercury came from the same place (the defendant's facility) and was released during the same incident by the same individuals, and therefore was part of the same release.

The defendant should not now, on the eve of trial, be granted a legal ruling that is in direct contradiction to the position they took regarding its legal duties at the time of release. The jury should be allowed to consider the defendant's October 26, 2004 letter to determine whether the defendant seriously believed at the time of the release that it did not have an immediate reporting requirement because the release of mercury at Lawn Terrace constituted a separate release.

**C. The Defendant's Motion Raises Issues of Fact for the Jury**

As the first two reasons demonstrate, the defendant's "Motion to Determine" goes beyond the scope of the Court's request to brief

---

[6] The letter was sent from Southern Union employee Robert Young to the Rhode Island State Fire Marshall and the Pawtucket Fire Department, the very entities that the defendant was required to provide immediate notice to under EPCRA.

"fundamental legal issues" to encompass factual disputes as well. The defendant's trial brief recognizes this reality when it cites to the Genicom case: "What is at issue is when . . . [the person in charge] have enough information that it could reasonably be said that it knew that the releases were at or above reportable quantities." Def. Trial Brief at 14. The defendant failed to quote the next sentence in Genicom, however, that states:

> At some point, however, the nature of the information can be such that the failure to give notice is indicative of the company not knowing the requirements or being hostile or indifferent to them, rather than of any uncertainty that a release in reportable quantities had taken place.

In the Matter of: Genicom Corporation, 1992 WL 204414 (E.P.A.) (Emphasis added). When did the defendant have enough information to report a release from its facility? The defendant knew that vandals had come on its property, tampered with the mercury stored there, and had left. The defendant was in a better position to know how much mercury was stored in the cabinet in Tidewater than anyone. Was the defendant deliberately ignorant to facts that suggested a release of a reportable quantity of mercury had occurred?

As this Court concluded about many of the issues raised by the defendant in its motions to dismiss, [t]hese are all issues the jury will need to sort out at trial." See, e.g., 8/5/08 Order at 11, n.10. Accordingly, the defendant's motion should be denied.

**D. EPCRA Does Not Contain an Exemption for Releases Caused by Third Parties**

The defendant argues that "as a matter of common sense, the law cannot obligate an owner to report a release of a chemical stolen and released at some unknown location." Def. Trial Brief at 14. EPCRA, however, contains no such exemption.[7] This makes sense because even if the release is caused in part by third parties, the owner/operator is still in the best position to notify local authorities about the hazardous chemicals involved, the amounts, and the circumstances surrounding the release. See 42 U.S.C. § 11004(b)(2) (describing contents of the notification). Regardless of how the release occurs, the owner/operator of the facility where the hazardous chemical is stored can provide the local emergency responders the most information required under EPCRA. Congress' lack of concern with how the release occurs is further evidenced by the broad definition of release, which includes "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment (including the abandonment or discarding of barrels, containers, and other closed receptacles." 42 U.S.C. § 11049(8)

---

[7] EPCRA provides one exemption to the notification requirement for "any release which results in exposure to persons solely within the site or sites on which a facility is located." 42 U.S.C. § 11004(a)(4). Southern Union cannot avail itself of this affirmative defense because it is undisputed that the release did not result in exposures to persons solely within the site — an entire apartment complex was evacuated.

(Emphasis added).

**E. <u>The Defendant's Interpretation of EPCRA to Preclude Imposing a Reporting Requirement Would Contravene the Purpose of the Statute</u>**

The Emergency Planning and Community Right-to-Know Act was enacted by Congress as the national legislation on community safety, designed to assist local and state authorities in protecting the public and the environment from hazardous chemicals. The immediate notification requirement to local emergency responders is not burdensome — it simply requires owners/operators of facilities that manufacture or store hazardous chemicals to pick up the phone when a release occurs in order to help protect the community. This notification is especially important in residential areas with schools nearby when time is of the essence to determine if exposures to toxic substances are occurring.

The defendant's cramped reading of the statute to preclude its duty to notify about a release of a hazardous material that stored at its facility because the material was carried off by vandals contravenes the purpose of EPCRA. This is especially the case when the owner/operator was responsible for the deplorable conditions of storage, the lack of security at the facility, and was on notice that the facility was being routinely accessed by members of the public.

## III. CONCLUSION

For the foregoing reasons, the government respectfully asks the Court to deny the defendant's motions.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/ TERRENCE P. DONNELLY
TERRENCE P. DONNELLY
Assistant U. S. Attorney
R.I. Bar No. 3506
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
terrence.donnelly@usdoj.gov

KEVIN CASSIDY
Trial Attorney
Department of Justice
Environmental Crimes Section
601 D St. NW
Washington, DC 20530
Tel (202) 305-0333
kevin.cassidy@usdoj.gov

DIANNE CHABOT
Special Assistant U.S. Attorney
Regional Criminal Enforcement Counsel
U.S. Environmental Protection Agency
One Congress Street
Suite 1100, SAA
Boston, MA 02114-2023
Tel (617) 918-1868
Fax (617) 918-0868
chabot.dianne@epa.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on September 17, 2008, a copy of the within United States' Consolidated Response in Opposition to Defendant's Motions to Preclude Enforcement of Rhode Island's Regulations Regarding Very Small Quantity Generators and to Determine Whether under EPCRA the Release of Mercury at the Lawn Terrace Apartment Complex Constitutes a Separate Release, and its accompanying Memorandum of Law, was filed electronically and is available for viewing and downloading from the ECF system.

Electronic notification:

JOHN A. TARANTINO (#2586)
jtarantino@apslaw.com
PATRICIA K. ROCHA (#2793)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, Rhode Island 02903
Tel: 401-274-7200
Fax: 401-351-4607

GERALD J. PETROS
HINCKLEY, ALLEN & SNYDER LLP
1500 Fleet Center
Providence, RI 02903

/s/ TERRENCE P. DONNELLY
TERRENCE P. DONNELLY
Assistant U. S. Attorney
R.I. Bar No. 3506
U.S. Attorney’s Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
terrence.donnelly@usdoj.gov