IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 07-134 S |
| | ) | |
| SOUTHERN UNION COMPANY | ) | |

## PRELIMINARY SENTENCING MEMORANDUM

William E. Smith, United States District Judge.

Defendant in this matter, Southern Union Company, has filed an objection to the pre-sentence report, prepared by the U.S. Office of Probation, which sets the maximum fine that may be imposed as a result of the Defendant's crime of conviction at $38.1 million, the equivalent of $50,000 per day for each day the Defendant illegally stored hazardous waste, liquid mercury, without a permit in violation of 42 U.S.C. § 6928(d)(2). In order to give the parties the ability to argue more meaningfully and effectively in both their written submissions and oral presentations at the upcoming sentencing hearing, the Court, after conferring with counsel, asked for briefs on this issue. For these same reasons the Court believes a ruling on Defendant's objection in advance of sentencing is in order. For the reasons set forth below, Defendant's objection will be overruled.

I.    Background

The Defendant, Southern Union Company, is a Delaware corporation based in Texas and primarily engaged in the business of transporting and distributing natural gas.   The Defendant was convicted after a jury trial of knowingly storing hazardous waste, liquid mercury, from on or about September 19, 2002 to October 19, 2004.   The penalty for this violation is a fine of not more than $50,000 for each day of violation.   42 U.S.C. § 6928(d).

The Defendant now argues that the jury's verdict is ambiguous with respect to the exact date range of the violation and that without a more exact finding by the jury on the date range of its violation the maximum penalty that the Court may legally impose is only $50,000 for one day of violation.   The Defendant further contends that any factual finding clarifying the verdict would violate Apprendi, which requires that any fact (other than a prior conviction) that would raise the defendant's sentence beyond the prescribed statutory maximum must be proved beyond a reasonable doubt to a jury.   See Apprendi v. New Jersey, 530 U.S. 466, 490 (2000).   The Government contends that Apprendi is inapplicable to fines in general; the finding of the jury is sufficient to support the $38.1 million fine maximum and no Apprendi-violating judicial findings are required; and, finally, even if it does apply the so-called alternative fine statute would apply and set the maximum fine at $500,000.   See 18 U.S.C. § 3571.

The analysis of Defendant's arguments begins with the charging document.  The Grand Jury charged the Defendant in a three count indictment with crimes relating to the illegal storage of hazardous waste in the form of liquid mercury and mercury sealed gas regulators and the failure to provide emergency notice of the release of liquid mercury into the environment.  The jury returned a guilty verdict on Count I -- relating to the storage of the liquid mercury -- but acquitted the Defendant on the two other counts.  In pertinent part, Count I of the Indictment charged as follows:

> 29.  From on or about September 19, 2002 until or on or about October 19, 2004, within the District of Rhode Island, Southern Union Company defendant herein, did knowingly store, and cause to be stored, hazardous wastes, namely, waste liquid mercury, on the premises of 91 Tidewater Street, Pawtucket, Rhode Island, without a permit issued pursuant to RCRA.
> All in violation of 42 U.S.C. § 6928(d)(2)(A) and 18 U.S.C. § 2.

(See Indictment (Doc. 1).)

During the trial the Government offered and the Court admitted into evidence daily work logs kept by the Defendant's Environmental Services Manager, which specifically referenced the storage of ten pounds of liquid mercury at Defendant's Tidewater Street facility in Pawtucket, Rhode Island on September 19, 2002.  (See Gov'ts Ex. 303; see also Trial Tr. Vol. 4, 110-112, Sept. 25, 2008 (Doc. 108); Trial Tr. Vol 5, 116-20, Sept. 29, 2008 (Doc. 109).)  The jury also heard testimony that on October 19, 2004 one of the Defendant's employees discovered that the liquid mercury the Defendant had been

illegally storing had been spilled by vandals who had broken into the mercury storage building, and the cabinet containing the liquid mercury.  (See Trial Tr. Vol 6, 22-25, Sept. 30, 2008 (Doc. 111).) Following a nearly four week trial, in its closing argument, the Government explained that September 19, 2002 was the earliest date the Government could establish with direct evidence that the Defendant was illegally storing liquid mercury.  (See Trial Tr. Vol. 13, 40:21-25, 41:1-12, Oct. 14, 2008 (Doc. 119).) Thereafter, the jury convicted the Defendant on Count I of the Indictment relating to the storage of the liquid mercury.  In its verdict, the jury specifically found, beyond a reasonable doubt, that:

> As to Count 1 of the Indictment, on or about September 19, 2002 to October 19, 2004, knowingly storing a hazardous waste, liquid mercury, without a permit, we the jury find the Defendant, Southern Union Company GUILTY.

(See Verdict Form (Doc. 98).)[1]

---

[1] Defendant's objection is reminiscent of Captain Renault's exclamation in the classic movie "Casablanca" that "I'm shocked, shocked to find that gambling is going on in here!"  See The Internet Movie Database at http://www.imdb.com/title/tt0034583/quotes.  In similar fashion Defendant seems shocked that the fine in this case may be as high as $38.1 million.  Yet, at the conclusion of the twelfth day of trial and the presentation of evidence, the Court instructed the parties that:

> I need you to come prepared to the charge conference with your suggestions as to the verdict form in this case and whether you feel there is a need for special interrogatories to the jury on some or all of the counts. We need to have a discussion about that as well.

(Trial Tr. Vol. 12, 47: 6-11, Oct. 8, 2008 (Doc. 122).)

On October 9, 2008, the Court engaged counsel in an extensive charge conference at which time the verdict form was discussed.

II.   Discussion

The Sixth Amendment requires that "any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." Cunningham v. California, 549 U.S. 270, 281 (2007).   However, "[a] sentencing court may make factual findings that result in an increase to a defendant's

---

While the initial conference discussion is off the record, the Court's notes reflect that one of the topics for discussion was "dates."   The Court's recollection is that the Government and the Defendant took the position that the dates in the Indictment were sufficient for the jury to render a verdict.   Per the Court's usual practice, the Defendant was allowed to state its objections to the jury charge and the verdict form after the conference.   No objections were asserted by the Defendant to the proposed verdict form.   To be absolutely sure, just before the jury began deliberations, the Court gave each party another opportunity to object to the verdict form, and the Defendant remained silent. (See Trial Tr. Vol. 13, 194:21-25, 195:1-5, Oct. 14, 2008 (Doc. 119).)

There can be little doubt that the Defendant, with its experienced and able counsel, knew at the time of the conference of the supposed ambiguity of which it now complains, but declined to seek clarification or more precision in the verdict form.   Indeed, it is beyond dispute that counsel expressed satisfaction with using the Indictment's "on or about September 19, 2002" language in the verdict form.   This hide the ball tactic is not without consequence.   In the Court's view the Defendant's failure to respond to the Court's invitation for even greater specificity in the verdict form, its assent to the use of the Indictment language, and its failure to formally place an objection on the record is a clear waiver of its newly minted objection. See United States v. Fisher, 494 F.3d 5, 9 (1st Cir. 2007); Fed. R. Crim. P. 30; see generally Petsch-Schmid v. Boston Edison Co., 1997 WL 100904, *1 (1st Cir. 1997) ("We have stated repeatedly that the failure to object before the jury retires to the charge or the verdict form constitutes a waiver.").   In spite of this waiver, the Court will go on to address the substance of Defendant's objection, which clearly lacks merit. See Fed. R. Crim. P. 52(b) (indicating that Court should review for plain error).

sentence as long as the sentence imposed is within the default statutory maximum." <u>United States v. Vasco</u>, 564 F.3d 12, 23 (1st Cir. 2009) (citing <u>United States v. Perez-Ruiz</u>, 353 F.3d 1, 15 (1st Cir. 2003)). The Supreme Court has defined "statutory maximum" as "the maximum sentence a judge may impose <u>solely on the basis of the facts reflected in the jury verdict or admitted by the defendant</u>." <u>Blakely v. Washington</u>, 542 U.S. 296, 303 (2004) (emphasis in original). "In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose <u>without</u> any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow . . . the judge exceeds his proper authority." <u>Id.</u> at 303-04 (emphasis in original).

The Court rejects the notion that <u>Apprendi</u> does not apply to fines and does not believe, as the Government argues, that the Supreme Court recently indicated in <u>dicta</u> anything to the contrary. <u>See</u> <u>Oregon v. Ice</u>, -- U.S. --, --, 129 S. Ct. 711, 719 (2009). The language the Government cites for the proposition that <u>Apprendi</u> does not apply to fines reads:

> Trial judges often find facts about the nature of the offense or the character of the defendant in determining, for example, the length of supervised release following service of a prison sentence; required attendance at drug rehabilitation programs or terms of community service; and the imposition of statutorily prescribed fines and orders of restitution. Intruding <u>Apprendi</u>'s rule into these decisions on sentencing choices or accoutrements surely would cut the rule loose from its moorings.

<u>Id.</u> (internal citation omitted).

6

The best that can be said about this passage is that Apprendi does not prevent a Court from engaging in judicial fact finding to determine the amount of a penalty within the prescribed statutory maximum range, which is something entirely different from finding a fact that determines the range.

With this guidance in mind, the actual issue for the Court to decide is what is the statutory maximum punishment for the Defendant's crime of conviction.  The statute under which the Defendant was convicted, 42 U.S.C. § 6928, prescribes that any person convicted shall be subject to a fine that is calculated based on the number of days (or length) of the violation.  Id. at § 6928(d).  Thus, the statutory maximum penalty for violations of § 6928 can and will vary from case to case, and can only be determined in any particular case after a factual finding is made concerning the number of days a defendant violated the statute. Because the maximum statutory penalty is tied to the length of the violation, Apprendi and its progeny requires the jury, and not the Court, to find the dates needed to calculate the maximum fine.  In practical terms what this means is that the maximum penalty must derive from the facts proven at trial to the jury and reflected by the verdict.  So for example, if the verdict form inquired whether the Defendant violated § 6928 by storing liquid mercury without a permit, with no date reference at all, and this Court proceeded to find beginning and end dates thereby increasing the penalty, it could be fairly said the judge was finding facts that increased the

statutory maximum.   This case, however, is not a situation where the jury gave no indication as to the dates of the Defendant's violation under § 6928.

In determining the statutory maximum in this case, the starting point is the date range contained in the jury's verdict and derived from the Indictment, that is "on or about September 19, 2002 to October 19, 2004."   This was the range listed on the verdict form and found by the jury beyond a reasonable doubt.  The Defendant's argument that the Court may only impose a fine of $50,000 because the jury did not report a finding as to the precise first date or last date when Southern Union violated RCRA ignores both the content and context of the verdict all together.  From the verdict form, it is clear that the jury conclusively found beyond a reasonable doubt that the Defendant's conduct ended on October 19, 2004 and that it began "on or about" September 19, 2002.  No other conclusion is logical or possible.

Strictly based on the dates listed in the verdict form the maximum length of the violation is 762 days, which when multiplied by $50,000 allows for a maximum fine of $38.1 million.  But that is not the end of the analysis of course, because the Indictment and the verdict form use the standard term "on or about" preceding the earlier date, September 19, 2002.  But while this common phrase may put a little play in the joints, it does not cut the legs out altogether.

In its instructions to the jury, the Court stated that the meaning of "on or about" is a date "reasonably near" the date alleged and the Defendant made no objection to that instruction. (See Trial Tr. Vol. 13, 14-33, 148:10-16 (Doc. 119).) Therefore, it defies reason to suggest the Defendant's illegal storage of liquid mercury began on any other date than a date reasonably near September 19, 2002. From this, it follows that the maximum statutory penalty that may be imposed based solely on the facts reflected in the jury verdict is a fine that is "reasonably near" $38.1 million.

Within this range of reasonably near $38.1 million, the Court is free, as the holding of Ice makes clear, to find facts that pinpoint the maximum fine, or establish a sentence that is at or below the maximum. At trial, the Government introduced direct evidence (work logs and testimony) that indicated that mercury was stored at least as early as September 19, 2002. Had there not been evidence of this date, no doubt the Defendant would have moved for dismissal of the Indictment on this ground and/or insisted on a verdict form that conformed to the evidence. Moreover, if such evidence were lacking the jury could have (and likely would have) returned a verdict of not guilty (as it did on Counts II & III). But the evidence introduced was clear and essentially irrefutable. From this it is easily found that the precise date for establishing the maximum penalty is in fact September 19, 2002. So long as the Court determines that the statutory maximum is at or below the

amount that derives from the verdict itself -- which is $38.1
million -- there can be no Apprendi violation.

III. Conclusion

For the foregoing reasons, the Defendant's objection to the
pre-sentence report on the maximum allowable fine that may be
imposed is OVERRULED. The Court will set the maximum fine that may
be imposed against the Defendant at $38.1 million as stated in the
pre-sentence report.

IT IS SO ORDERED.


_____
William E. Smith
United States District Judge
Date:  7/9/09