**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 07-134-S |
| | ) | |
| SOUTHERN UNION COMPANY | ) | |

**UNITED STATES' MEMORANDUM CONCERNING**
**THE ISSUES THAT SHOULD BE RESOLVED ON REMAND**

**Introduction and Summary of Arguments**

There are three main issues that the Court should resolve on remand: (1) whether the Court may empanel a jury to find the number of days of the violation; (2) whether the $12 million in community service obligations rest on a different statutory and constitutional basis than the $6 million fine; and (3) whether the alternative fine statute permits a fine of up to $500,000.

The government addresses the issues in this order for practical reasons. If empaneled, a jury is likely to find at least the number of days that would support the original judgment, even if one assumes (incorrectly) that the $12 million is part of an overall fine totaling $18 million. This outcome would moot the second and third issues. By contrast, if the government were to prevail solely on the second and third issues, the net result would be $12 million in community service payments and a fine of up to $500,000. And if the government were to prevail solely on the third issue, the net result would be a fine of up to $500,000. Needless to say, the third result would be unsatisfactory given the magnitude of the company's

violations and the aggravating factors that this Court cited at the original sentencing.

Summary of the first argument. As shown below, state and federal case law supports the notion that a trial court may convene a jury on remand to remedy an *Apprendi* error, by having the jury decide the missing fact in question. Basic principles of Double Jeopardy law make clear that the Constitution does not bar such a proceeding. This may explain why the company largely avoided a substantive discussion of Double Jeopardy law in its First Circuit response and focused mainly on waiver claims – claims that lack force for reasons stated below.

Summary of the second argument. The $12 million in community service obligations rest not on the RCRA fine provision in 42 U.S.C. § 6928(d), but rather on the probation statute, 18 U.S.C. § 3563(b). Because companies are often ill-equipped to provide community services that would meaningfully address their offenses, a district court may order a corporate defendant to fund services provided by other entities. This authority is based on section 3563(b) alone. It is not based on section 6928(d) and it is not limited by that statute. Moreover, because community service obligations are remedial in nature and indeterminate (they are not subject to any statutory maximums or tiers) they are akin to restitution, and are thus beyond the reach of *Apprendi*. Thus, consistent with the First Circuit's remand order, which carefully directs this Court to vacate only the "fine" imposed, the Court should hold that the $12 million is not part of that fine and that it remains intact.

<u>Summary of the third argument</u>. Even if the $6 million fine were vacated in the absence of a jury determination concerning the number of days of the violation, the alternative fine statute applicable to corporate defendants, 18 U.S.C. § 3571(c), yields a $500,000 maximum fine wholly independent of section 6928(d). Section 3571(c) does not demand any further fact-finding. All that it requires is a felony conviction. Thus, the Court may still impose a fine of up to $500,000 consistent with the Supreme Court's decision.

## **Procedural History**

On June 21, 2012, the Supreme Court held by a 6-3 vote that the *Apprendi* rule applies to criminal fines. *Southern Union Co. v. United States*, 132 S. Ct. 2344, 2357 (2012). The Court concluded that there was *Apprendi* error in this case because the jury was not asked to determine the fact that triggers higher fine maximums under 42 U.S.C. § 6928(d): the number of days of the violation. *Id*. It thus ordered the case to be "remanded for further proceedings consistent with this opinion." *Id*.

In its original opinion, the First Circuit noted that at least two issues would need to be resolved by this Court if the case were remanded: (1) whether the $12 million in community service obligations stand on a different footing than the $6 million fine; and (2) whether the alternative fine statute, 18 U.S.C. § 3571(c), which allows for a fine of up to $500,000 when a corporation is convicted of *any* felony, applies here. *United States v. Southern Union Co.*, 630 F.3d 17, 37 (1st Cir. 2010).

3

When the Supreme Court remanded the case, the government filed a motion asking the First Circuit to clarify that there was at least one further issue that would need to be resolved by this Court on remand: whether the Court may empanel a jury to decide beyond a reasonable doubt the number of days of the violation. On July 26, 2012, the First Circuit vacated "the fine imposed" by this Court and remanded "for further proceedings consistent with the Supreme Court's opinion." It denied the government's motion for clarification "without prejudice," specifically noting that: "This order is also without prejudice to each party raising before the district court on remand the issues contained in the government's Motion and the defendant's opposition thereto." It issued the mandate on August 23, 2012.

## The Court Should Empanel a Jury

This Court should empanel a jury to determine the number of days of the violation. Such a procedure would fully remedy the violation found by the Supreme Court, and it would be entirely consistent with *Apprendi* and existing case law as well as the Double Jeopardy Clause of the Constitution.

Several state courts have allowed post-conviction empanelment of juries to remedy *Apprendi* errors. *See State v. Jess*, 117 Hawaii 383, 184 P.3d 133, 142-67 (2008); *Hankerson v. State*, 723 N.W.2d 232, 236-41 & n.5 (Minn. 2006); *State v. Schofield*, 895 A.2d 927, 937-38 (Me. 2005); *Trusley v. State*, 829 N.E.2d 923, 927 (Ind. 2005); *Smylie v. State*, 823 N.E.2d 679, 685-87, 691 (Ind. 2005); *State v. Sawatzky*, 339 Or. 689, 125 P.3d 722, 723-27 (2005); *Aragon v. Wilkinson*, 209 Ariz. 61, 97 P.3d 886, 891 (Ct. App. 2004); *cf. People v. Anderson*, 47 Cal.4th 92, 97

4

Cal.Rptr.3d 77, 211 P.3d 584, 605 (2010); *State v. Chauvin*, 723 N.W.2d 20, 23-31 (Minn. 2006).

There is little federal case law on the subject, likely because the Supreme Court eliminated many *Apprendi* problems federally when it made the sentencing guidelines advisory in *United States v. Booker*, 543 U.S. 220, 245 (2005). Nonetheless, there are decisions that endorse empaneling juries on remand to remedy *Apprendi* errors. *See United States v. Ameline*, 376 F.3d 967, 983-84 (9th Cir. 2004) (holding there was *Apprendi* error when judge found drug quantity and firearm enhancement facts, but on remand "the district court may convene a sentencing jury to try the drug quantity and firearm issues, which, if proven beyond a reasonable doubt, may be used to increase Ameline's sentence"), *superceded by United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005) (en banc) (addressing intervening decision in *Booker*); *United States v. Booker*, 375 F.3d 508, 514 (7th Cir. 2004) (holding judge could not make drug weight and obstruction of justice findings under then-mandatory guidelines, but noting remand option of "a sentencing hearing at which a jury will have to find by proof beyond a reasonable doubt the facts on which a higher sentence would be premised," and also noting that "there is no novelty in a separate jury trial with regard to the sentence") (Posner, J.), *aff'd*, 543 U.S. 220 (2005); *United Sates v. Henry*, 282 F.3d 242, 253 (3d Cir. 2002) ("We find it consistent with the mandate of *Apprendi* to remand for a jury to determine these facts beyond a reasonable doubt . . . [and] see no reason why a jury cannot be convened for the sole purpose of deciding the facts that will determine the

5

sentence"); *United States v. Cooney*, 26 Fed. Appx. 513, 529 (6th Cir. 2002) (unpublished) ("For the district court to resentence Cooney to life imprisonment under [21 U.S.C.] § 841(a)(1) it must impanel a jury and have the jury find the amount of drugs involved beyond a reasonable doubt"); *see also United States v. Montiel-Sanchez*, 171 Fed. Appx. 599, 600 (9th Cir. 2006) (unpublished) ("The district court should convene a new sentencing jury to determine the drug quantity under 21 U.S.C. § 841(b)(1)"). Moreover, the relevant statutes and rules concerning jury empanelment do not pose any bar. *See* 18 U.S.C. §§ 3441, 3442; Fed. R. Crim. P. 23 and 24.

Nor would such a proceeding implicate the Double Jeopardy Clause, which "protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense." *Justices of Boston Mun. Court v. Lydon*, 466 U.S. 294, 306-07 (1984). Convening a jury to address the days of violation would not threaten any of these three harms.

In particular, there has been no acquittal or even implied acquittal on the fact in question. *See Sattazahn v. Pennsylvania*, 537 U.S. 101, 108-13 (2003); *see also Poland v. Arizona*, 476 U.S. 147, 153-57 (1986); *Bullington v. Missouri*, 451 U.S. 430, 446 (1981); *Price v. Georgia*, 398 U.S. 323, 328-29 (1970); *Green v. United States*, 355 U.S. 184, 190-91 (1957); *Farmer v. McDaniel*, 666 F.3d 1228, 1233-37 (9th Cir. 2012); *Storey v. Roper*, 603 F.3d 507, 521-22 (8th Cir. 2010), *cert. denied*, 131 S. Ct. 1574 (2011); *United States v. Williams*, 449 F.3d 635, 644-46 (5th Cir.

2006). Rather, Southern Union, the government, the First Circuit, and the Supreme Court have all agreed that the jury was never even *asked* to find the number of days of the violation. That issue was simply never before the jury. As the company itself has noted, "the only violation the jury necessarily found was for one day." *Southern Union*, 132 S. Ct. at 2349.

It is equally clear that, given the reversal and remand, this case is continuing. Although jeopardy has attached, it has not yet terminated because the "criminal proceedings against [Southern Union] have not run their full course." *Price*, 398 U.S. at 326; *see also Sattazahn*, 537 U.S. at 113; *Lydon*, 466 U.S. at 307-10; *Delgado v. Florida Dept. of Corrections*, 659 F.3d 1311, 1323-29 (11th Cir. 2011); *United States v. Steel*, 626 F.3d 1028, 1030-31 (9th Cir. 2010); *United States v. Pacheco*, 434 F.3d 106, 111-14 (1st Cir. 2006); *United States v. Porter*, 807 F.2d 21, 23-24 (1st Cir. 1986). Moreover, a further proceeding would not entail new or amended charges. The "on or about" dates of the original indictment spanned the full 762 days, so Southern Union has always been on notice that it faces a potential fine of up to $38.1 million.

*Sattazahn* illustrates the key point. There, the Supreme Court noted that under the *Apprendi* rule as applied in *Ring v. Arizona*, 536 U.S. 584 (2002), aggravating facts that trigger the death penalty must be found by a jury beyond a reasonable doubt during the penalty phase. *Sattazahn*, 537 U.S. at 111-13. Nonetheless, the Court held that the Double Jeopardy Clause did not bar a retrial on the death penalty since the first jury "deliberated without reaching a decision on

7

death or life, and without making any findings regarding aggravating or mitigating circumstances." *Id.* at 112-13. Given the absence of such findings, the Court reasoned, there was nothing that could count as an "acquittal" for double jeopardy purposes. *Id.* at 109.

Here, the original jury did not find – and was not even *asked* to find – the aggravating fact in question: the number of days of the violation. Thus, the submission of that fact to a second jury, following the Supreme Court's remand and before jeopardy has terminated, would not offend the Double Jeopardy Clause.[1]

At bottom, the error in this case – the failure to submit a fact to the jury – is akin to a conventional trial error, such as the failure to instruct a jury on an element of a crime. The Double Jeopardy Clause does not bar retrial in the case of such errors; indeed, a complete retrial is permitted. *See Burks v. United States*, 437 U.S. 1, 15 (1978) (trial errors such as "incorrect instructions" do not bar retrial); *Price*, 398 U.S. at 324 & 327 (same); *Steel*, 626 F.3d at 1030-31 (same); *United States v. Wittig*, 575 F.3d 1085, 1102 (10th Cir. 2009) (same); *United States v. Ellyson*, 326 F.3d 522, 532 (4th Cir. 2003) (same); *United States v. Miller*, 952 F.2d 866, 872 (5th Cir. 1992) (same). One rationale for this result is that "reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case." *Burks*, 437

---

[1] It is worth noting that, unlike in *Sattazahn*, here the government is not even alleging a new aggravating factor. The original indictment gave notice that the company might be held accountable for all 762 days. In any event, it is settled that due process principles do not alter the double jeopardy analysis. *See Sattazahn*, 537 U.S. at 116; *United States v. Neto*, 659 F.3d 194, 201 (1st Cir. 2011), *cert. denied*, 132 S. Ct. 1611 (2012).

U.S. at 15. Thus, it is hard to see why the clause would prevent a further proceeding aimed at resolving a fact that no jury has addressed because the original jury instructions did not ask the jury to find that fact.

Not surprisingly, therefore, state decisions that have confronted the Double Jeopardy question have held that the clause does not bar a jury proceeding in this setting, although these opinions could be clearer in their reasoning. *See Hankerson*, 723 N.W.2d at 236-41 & n.5; *Sawatzky*, 125 P.3d at 723-27; *Aragon*, 97 P.3d at 891. Moreover, none of the federal decisions that endorse convening a jury to remedy *Apprendi* errors on remand so much as hints that this might pose Double Jeopardy problems. *See Ameline*, 376 F.3d at 983-84; *Booker*, 375 F.3d at 514 (Posner, J.); *Henry*, 282 F.3d at 253; *Cooney*, 26 Fed. Appx. at 529; *see also Montiel-Sanchez*, 171 Fed. Appx. at 600.

The same result follows even assuming *arguendo*, and by analogy, that Southern Union was convicted of a lesser included offense (a presumed single-day violation) and that the penalty proceeding would ask the jury to deliberate on a greater offense (a multi-day violation). The key point is that by its own admission, Southern Union was never *tried* on that greater offense. *See Blueford v. Arkansas*, 132 S. Ct. 2044, 2052 (2012) (noting that in *Green* and *Price*, "we held that the Double Jeopardy Clause is violated when a defendant, tried for a greater offense and convicted of a lesser included offense, is later retried for the greater offense"). Put another way, and again assuming the validity of the analogy that the company may make (though it refrained from developing the point in its First Circuit

9

response), the jury was never "given a full opportunity to return a verdict" on the greater charge. *Green*, 355 U.S. at 191; *see also Price*, 398 U.S. at 328-29. That conclusion follows inescapably from the position that the company itself has taken all along, namely, that "the only violation the jury necessarily found was for one day." *Southern Union*, 132 S. Ct. at 2349.

The company's main response in the First Circuit was to claim that the government somehow "waived" the right to argue that an *Apprendi* error may be remedied by a jury determination of the missing fact. It said that this waiver occurred at both the district court and appellate levels. That is incorrect.

It is certainly true that First Circuit case law allows a defendant to preserve an *Apprendi* error by objecting at sentencing, and that it effectively allows a defendant to lay in wait during the jury instruction phrase. *See United States v. Pérez-Ruiz*, 353 F.3d 1, 14 (1st Cir. 2003); *United States v. Nelson-Rodriguez*, 319 F.3d 12, 47 (1st Cir. 2003). It is quite another thing, however, to say that the *government* waives any argument concerning the proper *remedy* for an *Apprendi* error when that error passes unnoticed at trial, as it did here. After all, under the classic definition, "waiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993); *accord United States v. Walker*, 665 F.3d 212, 227 (1st Cir. 2011), *cert. denied*, 132 S. Ct. 2713 (2012).

Here, no one has contended that the government saw the *Apprendi* error as it was occurring and deliberately chose to remain silent about it, whether through

10

indifference or for some strategic reason. Indeed, it was not even evident at the time that there *was* an error in progress, since it was not clear – and did not become clear until the Supreme Court's decision – that *Apprendi* applies to fines in general or to RCRA fines in particular.

The latter point bears emphasis. At the time of trial, the Seventh Circuit had issued one decision that tersely applied *Apprendi* to a fine, *see United States v. LaGrou Distribution Sys., Inc.*, 466 F.3d 585, 594 (7th Cir. 2006), and another decision that pointed in the exact opposite direction, in a Clean Water Act case with a RCRA-like fine provision, *see United States v. Chemetco*, Inc., 274 F.3d 1154, 1158-61 (7th Cir. 2001). No other published decision had addressed the issue. Moreover, a few months after the verdict, the Supreme Court itself strongly suggested that *Apprendi* should *not* apply to fines. *See Oregon v. Ice*, 555 U.S. 160, 171-72 (2009). The First Circuit ultimately agreed in this case by a 3-0 vote. The Supreme Court has now reversed, but it did so over a strong dissent by Justice Breyer that was joined by two other justices.

Aside from the fact that these circumstances do not amount to waiver under the settled standard, and that they do not counsel a waiver finding under more general equitable considerations, the company's waiver argument makes little sense for a more basic reason. The error at issue concerns a right held by Southern Union, not a right held by the government: the right to a jury determination on the fact in question. That right was not clearly established until the Supreme Court's decision. Now it is. When a defendant claims error due to a flawed or missing trial procedure,

11

the general remedy is a remand to supply that procedure. Here, the procedural omission was a jury finding concerning the number of days of the violation – a procedure to which Southern Union is now entitled. It would thus be odd in the extreme to find that the government waived a remedy owed to Southern Union, in the case of the denial of a right belonging to Southern Union that did not even clearly exist at the time of trial.

To paraphrase the *Olano* waiver standard quoted above, the "right" here was not the government's, it was not a "known" right at the time, and at all events it was not a right that the government intentionally "relinquished" or "abandoned." Thus, the company fails every facet of the waiver test.

The same basic logic applies to the company's claim that the government waived the remedy issue at the appellate level. Beyond that logic, however, the company's argument here overlooks the fact that the government was the *appellee* in the First Circuit appeal. It was not incumbent on the government as appellee to point out all of the possible remand options in the event that the First Circuit were to hold that there was *Apprendi* error. Generally circuit courts refrain from addressing such options in detail on appeal and instead leave the matter to the discretion of the district court in the first instance, remanding for proceedings "consistent" with the reversing opinion, as the First Circuit ultimately did here. *See, e.g., United States v. McFalls*, 675 F.3d 599, 606 (6th Cir. 2012) (stating that "[a] general remand effectively wipes the slate clean . . . [and] gives the district court authority to redo the entire sentencing process" and that "[t]he only constraint is

12

that the district court must remain consistent with the remand."). Thus, although the government identified two possible remand issues in its original First Circuit brief (the two issues discussed below), it could have refrained from mentioning *any* such issues without foreclosing or limiting this Court's remand options. *Cf. Door Systems, Inc. v. Pro-Line Door Systems, Inc.*, 83 F.3d 169, 174 (7th Cir. 1996) ("An appellee is not required to advance every possible ground for affirmance; and should the case be remanded it can advance the additional grounds in the district court, provided they have not been waived in that court."); *Smith v. Richert*, 35 F.3d 300, 305 (7th Cir. 1994) (same).[2]

For these reasons, the Court should empanel a jury to find the number of days of the violation.

---

[2] The three cases that Southern Union cited in its First Circuit response (Response at 7) all concern the standard rule that an appellant must object to an alleged error in the district court to preserve a claim for appeal: *Puckett v. United States*, 556 U.S. 129, 134-35 (2009); *United States v. Taylor*, 511 F.3d 87, 91 (1st Cir. 2007); *United States v. Connelly*, 504 F.3d 206, 220 (1st Cir. 2007). None of these cases even remotely suggests that an *appellee* must anticipate and address every possible issue that might arise on remand if the circuit court were to find error on appeal. Moreover, the two pages that the company devoted to a substantive Double Jeopardy discussion (Response at 9-10) focused mainly on a strawman: the company stated incorrectly that the government's argument is that there is no Double Jeopardy problem because a second jury "will only determine sentencing factors." (Response at 9.) The company well knows that the government never said any such thing. The company did not cite a single Double Jeopardy case in support of its substantive position. (Response at 9-10.)

## The $12 Million is Not Part of the Fine

The probation statute lists 23 discretionary conditions of probation. 18 U.S.C. § 3563(b). One of those conditions expressly states that a district court may order that the defendant "work in community service as directed by the court." 18 U.S.C. § 3563(b)(12). Another provides more broadly that the court may order the defendant to "satisfy such other conditions as the court may impose." 18 U.S.C. § 3563(b)(22). This latter provision and the legislative history of the statute make clear that the list of discretionary conditions is merely an illustrative guide for sentencing courts; it is not exhaustive, and it is not meant to restrict their authority to fashion appropriate probation terms. *See* S. Rep. No. 225, 98th Cong., 1st sess. (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3278 ("The list is not exhaustive, and it is not intended at all to limit the court's options – conditions of a nature very similar to, or very different from, those set forth may also be imposed."); *see also United States v. Bahe*, 201 F.3d 1124, 1135 & n.8 (9th Cir. 2000); *United States v. Gurtunca*, 836 F.2d 283, 287-88 & n.4 (7th Cir. 1987).

All that the probation statute requires is that the conditions imposed be "reasonably related to the factors set forth in [18 U.S.C. §] 3553(a)(1) and (a)(2)," and that they "involve only such deprivations of liberty or property as are reasonably necessary for the purposes indicated in section 3553(a)(2)." 18 U.S.C. § 3563(b); *see also* USSG § 8B1.3 (advisory sentencing guidelines provision stating that court may order an organization to perform community service as condition of

probation "where such community service is reasonably designed to repair the harm caused by the offense").

As section 3563(b)'s phrase "liberty or property" indicates, the statute itself contemplates that some conditions of probation may result in deprivations of property. Moreover, the First Circuit has already rejected the company's argument that the $12 million in community service obligations and the $6 million fine are unreasonable under the criteria in 18 U.S.C. § 3553 – a holding unaffected by the intervening Supreme Court decision. *See Southern Union Co.*, 630 F.3d at 38-39. Indeed, the court reached this result "[e]ven assuming arguendo that the $12 million community service obligation was a fine." *Id.* at 38.

As the non-binding advisory sentencing guidelines observe, "[a]n organization can perform community service only by employing its resources or paying its employees or others to do so." USSG § 8B1.3, *comment.* (backg'd). When a corporate defendant possesses the requisite skills and capacity to provide community services that meaningfully address the harms caused by its offenses, an order requiring such services may be the most "efficient" result. *Id.* In many cases, however, companies are ill-suited to the task at hand. In those cases it makes more sense to order the company to fund relevant community services that will be performed by other entities. *Id.*

Of course, the funded services must further the goals of section 3553(a). USSG § 8B1.3, *comment.* (backg'd). Thus, for example, "[r]equiring a defendant to endow a chair at a university or to contribute to a local charity would not be

15

consistent with this section unless such community service provided a means for preventative or corrective action directly related to the offense and therefore served one of the purposes of sentencing set forth in 18 U.S.C. § 3553(a)." *Id.* But here the $12 million in community service obligations *will* serve these purposes, and the First Circuit has already rejected the company's reasonableness attacks based on section 3553.

This Court is not alone in ordering community service payments. As the attached table illustrates, district courts have ordered such payments in many cases, particularly those involving environmental crimes. (Exhibit 1.) Moreover, as here, the community service obligations have sometimes exceeded the amount of the fines imposed. To the government's knowledge, this is the first case in which a company has directly challenged a district court's authority to order community service payments under section 3563(b) – a challenge the company did not make in the original First Circuit appeal.

It is true that there are older cases that take a more grudging view of a district court's statutory authority to order monetary conditions of probation. *See United States v. John Scher Presents, Inc.*, 746 F.2d 959, 960-64 (3d Cir. 1984); *United States v. Missouri Valley Construction Co.*, 741 F.2d 1542, 1546-51 (8th Cir. 1984) (en banc); *United States v. Wright Contracting Co., Inc.*, 728 F.2d 648, 652-53 (4th Cir. 1984); *United States v. Prescon Corp.*, 695 F.2d 1236, 1242-44 (10th Cir. 1982); *United States v. Clovis Retail Liquor Dealers Trade Association*, 540 F.2d 1389, 1390 (10th Cir. 1976); *cf. United States v. Mitsubishi International Corp.*, 677

16

F.2d 785, 788-89 (9th Cir. 1982); *United States v. Atlantic Richfield Co.*, 465 F.2d 58, 61 (7th Cir. 1972).[3]

These cases have a common thread. They are all based on an earlier probation statute that was repealed by the Sentencing Reform Act of 1984 – an Act that became effective in 1987 and that significantly expanded a district court's authority to order conditions of probation. *See Gurtunca*, 836 F.3d at 287-88 & n.4; S. Rep. No. 225, 98th Cong., 1st sess. (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3278. In particular, the old probation statute did not contain a community service provision like the one in current section 3563(b)(12). *See* 18 U.S.C. § 3651 (repealed). Neither did the old probation statute contain a catch-all clause like the one in current section 3563(b)(22), which makes clear that the listed conditions are merely illustrative – a point that Congress took pains to emphasize in the quoted legislative history. *Id*. Indeed, somewhat bizarrely, under the old probation statute, a district court could not order a corporate defendant to serve *any term of probation* if it imposed the maximum fine. *See United States v. Interstate Cigar Co., Inc.*, 801 F.2d 555, 555-58 (1st Cir. 1986).

At all events, none of these older cases resolves the question of whether section 3563(b) authorizes community service payments in lieu of actual community service. Clearly it does. Indeed, in an earlier case overseen by Chief Judge Lisi, one of Southern Union's current lawyers (who was then representing defendant

---

[3] The company cited the latter two decisions in its pre-sentence letter to the Court dated May 28, 2009. (Exhibit 2.) So far, however, it has refrained from relying on the remaining cases.

GeneScience Pharmaceutical Company) expressly conceded this very point, while supplying helpful analysis in support of the concession. (Exhibit 3.)

It follows that the statutory authority to order community service payments rests not on the RCRA fine provision in 42 U.S.C. § 6928(d), but rather on the probation statute, 18 U.S.C. § 3563(b). As now explained, it is this procedural reality that makes the *Apprendi* rule – and the Supreme Court's recent decision – inapplicable to the $12 million portion of the judgment.

Unlike RCRA fines and most prison terms, community service obligations are indeterminate. They are not subject to statutory maximums, tiers, grades or plateaus. They do not escalate based on statutorily-required findings, whether made by a judge or a jury. Rather, by their very nature, they are open ended and within the discretion of the sentencing court. This discretion is guided by general statutory criteria, but there are no facts (such as the days of violation) that trigger stepped increases in the maximum allowed payments. There are no such maximums, period.

In all material respects, then, community service obligations are akin to restitution. Like restitution, they are remedial in nature. As the Court noted at the original sentencing, for example, the purpose of the $11 million endowed fund is to "pay forward . . . the damage that's been done to the community and to benefit people in the State of Rhode Island in a manner that relates to this crime in perpetuity." (Sen. Tr. 64.) More crucially, and also like restitution, such payments do not rise incrementally based on required statutory findings. Rather, they are wholly indeterminate.

18

The First Circuit has held that restitution is immune from the *Apprendi* rule. *See Southern Union Co.*, 630 F.3d at 34 n.14; *United States v. Milkiewicz*, 470 F.3d 390, 402-04 (1st Cir. 2006); *see also United States v. Ziskind*, 471 F.3d 266, 269 (1st Cir. 2006), *cert. denied*, 549 U.S. 1316 (2007); *United States v. Burnette*, 423 F.3d 22, 24 (1st Cir. 2005), *cert. denied*, 547 U.S. 1184 (2006).

Other circuits have uniformly agreed, stressing the indeterminate nature of restitution while sometimes noting its remedial character. *See United States v. Pfaff*, 619 F.3d 172, 175 (2d Cir. 2010), *cert. denied*, 131 S. Ct. 3059 (2011); *United States v. Lay*, 612 F.3d 440, 448 (6th Cir. 2010), *cert. denied*, 131 S. Ct. 1570 (2011); *United States v. Bonner*, 522 F.3d 804, 807 (7th Cir.), *cert. denied*, 555 U.S. 883 (2008); *United States v. Tin Yat Chin*, 476 F.3d 144, 147 (2d Cir. 2007); *United States v. Reifler*, 446 F.3d 65, 118-19 (2d Cir. 2006); *United States v. Williams*, 445 F.3d 1302, 1310-11 (11th Cir. 2006); *United States v. Sharp*, 442 F.3d 946, 952 (6th Cir. 2006); *Dohrmann v. United States*, 442 F.3d 1279, 1281 (11th Cir. 2006); *United States v. Johnson*, 440 F.3d 832, 849 (6th Cir.), *cert. denied*, 549 U.S. 829 (2006); *United States v. Leahy*, 438 F.3d 328, 337-38 (3d Cir. 2006) (en banc); *United States v. Belk*, 435 F.3d 817, 819 (7th Cir.), *cert. denied*, 549 U.S. 846 (2006); *United States v. Visinaiz*, 428 F.3d 1300, 1316 (10th Cir. 2005), *cert. denied*, 546 U.S. 1123 (2006); *United States v. Sosebee*, 419 F.3d 451, 461 (6th Cir. 2005); *United States v. Carruth*, 418 F.3d 900, 902-04 (8th Cir. 2005); *United States v. May*, 413 F.3d 841, 849 (8th Cir.), *cert. denied*, 546 U.S. 1024 (2005); *United States v. George*, 403 F.3d 470, 473 (7th Cir.), *cert. denied*, 546 U.S. 1008 (2005); *United States v. Wooten*, 377

19

F.3d 1134, 1144-45 & n.1 (10th Cir.), *cert. denied*, 543 U.S. 993 (2004); *United States v. Syme*, 276 F.3d 131, 159 (3d Cir.), *cert. denied*, 537 U.S. 1050 (2002); *United States v. Bearden*, 274 F.3d 1031, 1042 (6th Cir. 2001). No circuit has held to the contrary.[4]

At least for purposes of *Apprendi* analysis, community service obligations are indistinguishable from restitution. They are remedial in nature and, more importantly, they are not subject to any statutory maximums. As such, they are not covered by the *Apprendi* rule or by the Supreme Court's decision in *Southern Union*. Although the First Circuit directed this Court to vacate the "fine" imposed, the $12 million is not part of that fine. The fine imposed was $6 million. The $12 million in community service obligations have a distinct statutory and constitutional basis. Thus, those obligations should remain intact even if the Court does not empanel a jury to determine the number of days of the violation.

---

[4] Courts have taken a similar approach to forfeiture. *See United States v. Saccoccia*, 564 F.3d 502, 507 (1st Cir.), *cert. denied*, 130 S. Ct. 226 (2009); *United States v. McAuliffe*, 490 F.3d 526, 540 (6th Cir.), *cert. denied*, 552 U.S. 976 (2007); *United States v. Swanson*, 483 F.3d 509, 516 (7th Cir.), *cert. denied*, 552 U.S. 981 (2007); *United States v. Huber*, 462 F.3d 945, 949 (8th Cir. 2006); *United States v. Alamoudi*, 452 F.3d 310, 314-15 (4th Cir. 2006); *United States v. Fruchter*, 411 F.3d 377, 382-83 (2d Cir.), *cert. denied*, 546 U.S. 1076 (2005); *United States v. Hall*, 411 F.3d 651, 654-55 (6th Cir. 2005); *United States v. Tedder*, 403 F.3d 836, 841 (7th Cir.), *cert. denied*, 546 U.S. 1075 (2005); *United States v. Messino*, 382 F.3d 704, 713 (7th Cir. 2004); *United States v. Genova*, 333 F.3d 750, 762-63 (7th Cir. 2003); *see also United States v. Crews*, 2012 WL 3517343, at *11 (E.D. Pa. Aug. 14, 2012) (holding that *Southern Union* decision does not affect this reasoning)

## **The Alternative Fine Statute Plainly Applies Here**

The alternative fine statute applicable to corporate defendants, 18 U.S.C. § 3571(c), yields a $500,000 maximum fine independent of the RCRA fine provision in section 6928(d) and without any further fact-finding.

Section 3571(c) states in relevant part:

> **Fines for organizations.-** Except as provided in subsection (e) of this section, an organization that has been found guilty of an offense may be fined not more than the *greatest* of –
>> (1) the amount specified in the law setting forth the offense;
>> (2) the applicable amount under subsection (d) of this section; [and]
>> (3) *for a felony, not more than $500,000 * * * .*

18 U.S.C. § 3571(c) (emphasis added).  In turn, subsection (e) provides:

> **Special rule for lower fine specified in substantive provision. -** If a law setting forth an offense specifies no fine or a fine that is lower than the fine otherwise applicable under this section *and such law, by specific reference, exempts the offense from the applicability of the fine otherwise applicable under this section*, the defendant may not be fined more than the amount specified in the law setting forth the offense.

18 U.S.C. § 3571(e) (emphasis added); *see generally United States v. Sun-Diamond Growers of California*, 526 U.S. 398, 405 (1999); *Pfaff*, 619 F.3d at 175; *United States v. Ming Hong*, 242 F.3d 528, 533 n.5 (4th Cir. 2001); *United States v. BP Products North America, Inc.*, 610 F. Supp.2d 655, 677 n.16 (S.D. Tex. 2009).

Section 6928(d) does not "by specific reference" exempt corporations from the alternative fine provision. In light of that provision, the statutory maximum fine is

$500,000. Because this maximum is triggered simply "where an organization . . . has been found guilty of an offense" which is a "felony," 18 U.S.C. § 3571(c)(3), regardless of the amount of loss or gain or the number of days of the violation, the Court need not make any additional findings beyond the verdict before imposing such a fine. Thus, *Apprendi* is simply inapplicable here as a threshold matter, and the Court may impose a fine of up to $500,000 consistent with the Supreme Court's decision.

Respectfully submitted,

UNITED STATES OF AMERICA
By its Attorneys,

PETER F. NERONHA
United States Attorney

/s/ Donald C. Lockhart

DONALD C. LOCKHART
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tele:  (401) 709-5030
FAX:  (401) 709-5001
donald.lockhart2@usdoj.gov

TERRENCE P. DONNELLY
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tele:  (401) 709-5030
FAX:  (401) 709-5001
terrence.donnelly@usdoj.gov

COLIN L. BLACK
Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Crimes Section
601 D Street, N.W.
Washington, DC 20530
Tele:  (202) 305-2729
colin.black@usdoj.gov

DIANNE G. CHABOT
Regional Criminal Enforcement Counsel
U.S. Environmental Protection Agency
Criminal Investigation Division
5 Post Office Square
Suite 100, OES04-2
Boston, MA 02109-3912
Tele:  (617) 918-1868
FAX:  (617) 918-0868
chabot.dianne@epamail.epa.gov

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2012, a copy of the within filing was filed electronically and is available for viewing and downloading from the ECF system.

Electronic notification:

JOHN A. TARANTINO (#2586)
jtarantino@apslaw.com
PATRICIA K. ROCHA (#2793)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, Rhode Island 02903

GERALD J. PETROS
HINCKLEY, ALLEN & SNYDER LLP
1500 Fleet Center
Providence, RI 02903

/s/ Donald C. Lockhart

DONALD C. LOCKHART

Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tele:  (401) 709-5030
FAX:  (401) 709-5001
donald.lockhart2@usdoj.gov