**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 07-134-S |
| | ) | |
| SOUTHERN UNION COMPANY | ) | |

**UNITED STATES' REPLY MEMORANDUM CONCERNING**
**THE ISSUES THAT SHOULD BE RESOLVED ON REMAND**

**The Court Should Empanel a Jury**

1.      **There was no waiver**

Southern Union devotes half of its response to arguing that the government waived the jury trial issue. (Docket No. 165 at 2-15.) The government addressed the waiver claims earlier. (Docket No. 163 at 10-13.) There are five main points in reply.

First, the company fails to acknowledge that "waiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993). There is simply no support for the notion that the government lawyers here "knew" that *Apprendi* applied to fines and deliberately sought to minimize the potential fine by not asking for jury findings on the duration of the violation. The fact is, it was not clear that *Apprendi* applied to fines until the Supreme Court's 6-3 decision in this very case – a decision that reversed a 3-0 opinion of the First Circuit. That the *Apprendi* issue was litigated all the way to the Supreme Court and that the government was just two votes shy of prevailing on the merits undercuts any suggestion that it knowingly waived a settled right at the 2008 trial or the 2009 sentencing.

Second, the two main First Circuit cases on which Southern Union relies (Docket No. 165 at 7-8) both concern the distinct question of what an *appellant* must do in the district court to preserve a claim of *Apprendi* error for appeal. *See United States v. Pérez-Ruiz*, 353 F.3d 1, 14 (1st Cir. 2003); *United States v. Nelson-Rodriguez*, 319 F.3d 12, 47 (1st Cir. 2003). Neither case suggests that the government as *appellee* is barred from seeking a jury determination of the disputed fact as a *remedy* for an *Apprendi* error if the appellant prevails on appeal. Indeed, the state and federal cases that the government cited earlier confirm that this *is* a proper remedy for *Apprendi* error. (Docket No. 163 at 4-6.) None of these cases so much as hints that the government waives the remedy question by not seeking a jury finding during the initial proceeding. The fact that the government may not have pursued that option in *Pérez-Ruiz* and *Nelson-Rodriguez* is of no moment. Those cases simply did not address the issue.

Third, the same problem inheres in Southern Union's reliance on Fed. R. Crim. P. 51(b) and the cases cited at pages 11-14 of its response: each addresses what an appellant must do to preserve a claim of error for appellate review. None purports to limit the remedy arguments that an appellee may make in the event that the claim ultimately succeeds on appeal and the case is remanded. Although the company tries to transform the government into an appellant by suggesting that it might have cross-appealed from the "verdict or the conviction" in the original First Circuit case, it does not explain what authority there would have been for such an appeal. (Docket No. 165 at 1, 3-4, 18.) Obviously the government had no

2

incentive or legal basis to appeal the jury's verdict convicting the company. Nor did it have any reason to appeal this Court's sentencing judgment, with which it was fully satisfied.

Fourth, even assuming that it somehow makes sense to treat the government as though it was (or could have been) an appellant, there can be no doubt that the remedy argument that the government now advances is "made newly relevant," *United States v. Wallace*, 573 F.3d 82, 88 n.5 (1st Cir. 2009), by the Supreme Court's intervening decision that *Apprendi* applies to fines. Until that outcome, the argument was wholly unnecessary; now it is highly germane. Thus, if anything, the language that the company quotes from *Wallace* and *United States v. Ticchiarelli*, 171 F.3d 24, 32 (1st Cir. 1999) (Docket No. 165 at 13) undermines its position. The altered legal landscape lends further justification to the government's request.

Fifth, despite the company's half-hearted assertion that empanelment of a jury is foreclosed by the First Circuit's mandate (Docket No. 165 at 14-15), the fact that the court noted two possible remand issues in its original decision hardly means that it issued a mandate that expressly or impliedly prohibits this Court from considering other issues. And although the First Circuit later declined to formally clarify its mandate, it specifically noted: "This order is also without prejudice to each party raising before the district court on remand the issues contained in the government's Motion and the defendant's opposition thereto." (July 26, 2012 Order.) In the end, it merely vacated "the fine imposed" by this Court and

remanded "for further proceedings *consistent with the Supreme Court's opinion*." (*Ibid*.) (emphasis added). The company does not address this order, even in passing.

### 2.    There is no double jeopardy bar

The government has already explained in detail why the Double Jeopardy Clause does not bar a second jury from determining the number of days of the violation. (Docket No. 163 at 4-10.) It makes five main points in reply to the company's response.

First, the response largely ignores the state and federal cases cited by the government that have allowed post-conviction empanelment of juries to remedy *Apprendi* errors. As pointed out earlier, several of the state cases expressly reject the company's double jeopardy position, and none of the federal cases betrays any double jeopardy concerns. (Docket No. 163 at 9.)

Second, the company persists in mischaracterizing the government's double jeopardy argument. That argument does not rest on the assertion that the number of days of the violation is merely a "sentencing factor." (Docket No. 165 at 16-17.) Rather, consistent with the Supreme Court's opinion and with *Apprendi* principles generally, the government has treated the days-of-violation as a quasi-element of a greater or aggravated offense that must be found by a jury beyond a reasonable doubt, and has then explained why the Double Jeopardy Clause still does not apply.

The bottom line is that the company was never *tried* on this greater or aggravated offense because the jury was never asked to make a days-of-violation finding. *See Blueford v. Arkansas*, 132 S. Ct. 2044, 2052 (2012) (noting that in *Green*

4

and *Price*, "we held that the Double Jeopardy Clause is violated when a defendant, tried for a greater offense and convicted of a lesser included offense, is later retried for the greater offense"). Put another way, since the instructions did not require it to make that determination, the jury was never "given a full opportunity to return a verdict" on the greater charge. *Green v. United States*, 355 U.S. 184, 191 (1957); *see also Price v. Georgia*, 398 U.S. 323, 328-29 (1970).

Third, in an effort to avoid the logic of cases like *Blueford*, *Green* and *Price*, the company makes the remarkable assertion that it *was* tried on the greater offense because the indictment alleged all 762 days. (Docket No. 165 at 18-21 & n.11.) The fact that the indictment spanned all 762 days, however, hardly means that the jury was asked to determine, and in fact found, the number of days of the violation; there is no meaningful sense in which that issue can be said to have been "tried." Although the company now suggests that the issue of whether the jury made a days-of-violation finding is a matter of "conjecture" (Docket No. 165 at 15 n.10), this newly-revised claim runs headlong into its earlier position that the jury never made such a determination – a position embraced by the government, the First Circuit, and the Supreme Court.

Fourth, the company offers no legal support whatever for its suggestions that the double jeopardy analysis turns on (1) the quantum of evidence that would have to be presented to a second jury, or (2) whether the factual issue for the second jury to resolve is "discrete." (Docket No. 165 at 15-17.) Suffice it to say that lines like these would be virtually impossible to draw, which may explain why they have no

5

foundation in the case law. The fact that the government may have to present most of the evidence that it offered earlier does not, without more, implicate the Double Jeopardy Clause.

Fifth and finally, the company's observation that jeopardy attached when the jury was empaneled and sworn, *see Crist v. Bretz*, 437 U.S. 28, 35 (1987), addresses only one of two bookends. As the government pointed out earlier (Docket No. 163 at 6-8), while it is clear that jeopardy has attached, it is equally clear that it has not yet terminated because the "criminal proceedings against [Southern Union] have not run their full course." *Price*, 398 U.S. at 326; *see also Sattazahn v. Pennsylvania*, 537 U.S. at 101, 113 (2003); *Justices of Boston Mun. Court v. Lydon*, 466 U.S. 294, 307-10 (1984). The case is plainly continuing because: (1) the indictment charged multiple days of violations; (2) the Supreme Court has now said that each day must be treated like an aggravated offense and found by a jury beyond a reasonable doubt; (3) the jury instructions never asked the jury to make such a days-of-violation finding; (4) that finding remains to be made; and (5) the case has been remanded for further proceedings consistent with the Supreme Court's decision. Empaneling a second jury is the natural next step.

## The $12 Million is Not Part of the Fine

Southern Union appears to agree that the $12 million in community service obligations rest not on the RCRA fine provision in 42 U.S.C. § 6928(d), but rather on the probation statute, 18 U.S.C. § 3563(b), which authorizes their imposition. (Docket No. 165 at 23.) Apart from dropping one tentative and unclear footnote

6

noting its reservations on the subject (Docket No. 165 at 23 n.15), the company does not seriously dispute this reality. Nor does it dispute the government's point that if community service obligations are indeterminate, they are akin to restitution and thus beyond the reach of *Apprendi*.

Instead, the company makes the narrower argument that the community service obligations authorized by Title 18 are *not* indeterminate because they are somehow capped by the fine maximums of Title 42. (Docket No. 165 at 22-24.) There are four main points in reply.

First, the company's argument overlooks a basic distinction between such obligations and fines. Fines are meant to punish and to deter. *See Harmelin v. Michigan*, 501 U.S. 957, 978 n.9 (1991) (fines are a form of "punishment" that have "the penal goals of retribution and deterrence"). By contrast, community service obligations have a largely remedial purpose, as this Court noted at the original sentencing. The aim of the $11 million endowed fund, for example, is to "pay forward . . . the damage that's been done to the community and to benefit people in the State of Rhode Island in a manner that relates to this crime in perpetuity." (Sen. Tr. 64.) The company's simplistic plea that "[a] fine is a fine" (Docket No. 165 at 23) seeks to evade this distinction with mere rhetoric.

Second, the company ignores the fact that the probation statute has a separate provision that specifically addresses fines. It states that: "If the court has imposed and ordered execution of a fine and placed the defendant on probation, payment of the fine or adherence to the court-established installment schedule shall

7

be a condition of probation." 18 U.S.C. § 3563(a). It is certainly true that a judge could not invoke this provision to impose a fine in excess of the applicable statutory maximum. Because community service obligations are not in fact fines, however, they are not subject to the fine maximums. That is not to say that they are limitless. Like other special conditions of probation, they must be "reasonably related to the factors set forth in [18 U.S.C. §] 3553(a)(1) and (a)(2)," and they must "involve only such deprivations of liberty or property as are reasonably necessary for the purposes indicated in section 3553(a)(2)." 18 U.S.C. § 3563(b).

Third, the company observes that in discussing the procedural history of the case, the Supreme Court noted that at the sentencing this Court appeared to treat the $12 million in community service payments as falling within the $38.1 million fine maximum. (Docket No. 165 at 21.) This one-sentence description hardly amounts to a "clear holding" (*ibid*.) that community service obligations constitute fines. The Supreme Court plainly did not address the substance of this distinction, and neither did this Court at the original sentencing. Moreover, the original First Circuit decision and its July 26 Order expressly allow for consideration of the issue.

Fourth and finally, the company relies on a district court opinion that was issued after the government filed its earlier motion: *United States v. Citgo Petroleum Corp.*, 2012 WL 4127800 (S.D. Tx. 2012). (Docket No. 165 at 22.) There are two key flaws with the *Citgo* decision: (1) it treats community service obligations as a species of fine, without addressing the basic distinction discussed above; and (2) it relies almost exclusively on cases that interpret the now-repealed

8

probation statute, which differed in crucial respects from the current probation statute – a point that the government made in its motion (Docket No. 163 at 14, 16-18) and that the company does not address.

### The Alternative Fine Statute Plainly Applies Here

Southern Union makes a four-sentence assertion to the effect that the statute which sets a default $500,000 fine maximum for corporate defendants does not apply here. (Docket No. 165 at 25.) The company appears to claim that when the statute refers to whether the maximum fine for the crime of conviction is "greater" or "lower" than $500,000, *see* 18 U.S.C. §§ 3571(c) and 3571(e), it is using as a benchmark not the fine maximum applicable in an individual case (here, $50,000 absent a further jury finding) but rather the highest possible theoretical fine maximum to which a defendant could ever be exposed in the most extreme hypothetical case. The company calls this the "aggregate maximum potential fine" – an amount that would be limitless in RCRA cases and that would always exceed $500,000 since RCRA violations might continue for an infinite number of days. If the company's apparent position were to prevail, the alternative fine statute would never apply where the fine maximum for the crime of conviction rises indefinitely based on particular facts such as the days of violation or the gain or loss.

The company offers no support for this bizarre reading of the alternative fine statute, whether in the text of sections 3571(c) or 3571(e) or in the case law. Indeed, it does not address the statute's language in any fashion. It also fails to identify

policy reasons that could explain why Congress might want such a strange result. The Court should reject the company's bare assertion out of hand.

Respectfully submitted,

UNITED STATES OF AMERICA
By its Attorneys,

PETER F. NERONHA
United States Attorney

/s/ Donald C. Lockhart

DONALD C. LOCKHART
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tele:  (401) 709-5030
FAX:  (401) 709-5001
donald.lockhart2@usdoj.gov

TERRENCE P. DONNELLY
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tele:  (401) 709-5030
FAX:  (401) 709-5001
terrence.donnelly@usdoj.gov

COLIN L. BLACK
Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Crimes Section
601 D Street, N.W.
Washington, DC 20530
Tele:  (202) 305-2729
colin.black@usdoj.gov

10

DIANNE G. CHABOT
Regional Criminal Enforcement Counsel
U.S. Environmental Protection Agency
Criminal Investigation Division
5 Post Office Square
Suite 100, OES04-2
Boston, MA 02109-3912
Tele:  (617) 918-1868
FAX:  (617) 918-0868
chabot.dianne@epamail.epa.gov

## CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2012, a copy of the within filing was filed electronically and is available for viewing and downloading from the ECF system.

Electronic notification:

JOHN A. TARANTINO (#2586)
jtarantino@apslaw.com
PATRICIA K. ROCHA (#2793)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, Rhode Island 02903

GERALD J. PETROS
HINCKLEY, ALLEN & SNYDER LLP
1500 Fleet Center
Providence, RI 02903

/s/ Donald C. Lockhart

DONALD C. LOCKHART
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tele:  (401) 709-5030
FAX:  (401) 709-5001
donald.lockhart2@usdoj.gov

11